ADELINE BROWN vs. THE STATE OF MARYLAND.

APPRENTICING OF FREE NEGROES: CODE, ART. 6, SEC. 31 TO 40: BILL OF RIGHTS, ART. 24, CONSTITUTION, ART. 3, SEC. 36, AND ART. 4, SEC. 12. In the clauses of the Constitution of Maryland, of 1864, by which slavery is abolished, and the abolition enforced, the words *slavery* and *slave* cannot be applied to a free negro apprenticed under the law as contained in the Code.

NEGRO APPRENTICESHIP DISTINGUISHED FROM SLAVERY AND "INVOLUNTARY SERVITUDE."—At no time was a negro apprentice regarded as, or denominated a slave within the meaning of that term, as applicable to the slave population of the State, which has been emancipated and made free by the present Constitution.

Nor can it be successfully maintained, that the phrase, *involuntary servitude* embraces the condition of the negro apprentice in Maryland, bound out in compliance with the terms and requirements of the State laws.

CONSTITUTIONAL LAW: SPECIAL LEGISLATION.—The 32nd SECTION OF THE 3rd ARTICLE OF THE CONSTITUTION OF 1864, which provides that "the General Assembly shall pass no special law for any case for which provision has been made by an existing general law," has respect to the *future* passage of any special law in a matter already provided for by a general law.

The sections of the *Code* relating to, or ranged under the title of Negro Apprentices, cannot be denominated a special law.

APPEAL from the Circuit Court for Anne Arundel county.

The facts of this case are fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Edward Gantt*, for the appellant:

The indictment is contrary to law. Enticing and persuading a negro apprentice to abscond, is made criminal, and punished as a misdemeanor or felony, in the discretion of the Court, by sec. 39, Art. 6, Md. Code Pub. Gen. Laws— a special law, and inconsistent with the Constitution of the State. Const., Art. 3, sec. 32. Declaration of Rights, Art. 4.

The indictment is founded upon and concludes, "contrary

to the Act of Assembly," which is a special law, and in-
consistent with the Constitution of the State. Const. 1864,
Art. 3, sec. 32. Declaration of Rights, Art. 4. Md. Code
Pub. Gen. Laws, Art. 6, sec. 39.

The indenture of apprenticeship prescribed by Art. 6, sec.
35, is void, the same being a special law, and inconsistent
with the Constitution. Declaration of Rights, Art. 4.
Const., Art. 3, sec. 32.

The indenture of apprenticeship authorised by the Md.
Code Pub. Gen. Law, ignores the essentials of a common
law contract, and sanctions "involuntary servitude," con-
trary to the Constitution. Const., Declaration of Rights,
Art. 24. *Chitty on Contracts.*

*Wm. Schley* and *Wm. S. Waters*, for the appellee:

The provisions of the Declaration of Rights and of the
Constitution, which are claimed to refer to the subject, and
to operate as a repeal of the negro apprentice laws, are:
The Declaration of Rights, Art. 24; Constitution of 1864,
Art. 3, secs. 32 and 36, and Art. 4, sec. 12.

Article 24, of the Declaration of Rights, is the same in
substance as the Constitutions of the several Northern States
and the Ordinance of 1787, for the government of the North-
western Territory; and yet, in all the Northern and North-
western States, and in England, all the features claimed to
be objectionable in the negro apprentice system in this State
prevail. Indeed, the most of them prevail in the white ap-
prentice system of this State. *Black. Com., tit. Apprentice.*
2 *Kent Com.*, 262, 263, 265, note a. *Day vs. Everett*, 7
*Mass.*, 145. *Phelps, et al., vs. Hartwell, et al.*, 1 *Mass.*,
71. *Nickerson vs. Howard*, 19 *Johns.*, 113.

This 24th Article of the Declaration of Rights is fully
explained by Article 3rd, sec. 36, and Article 4th, sec. 12
of the Constitution, as having relation only to such as were
slaves at the time the Constitution was adopted. The con-
dition of the free negroes was not affected by it. If the ap-
prenticeship system was in force in regard to those who

were free at the time the Constitution was adopted, it must have continued in force, and be in operation now. Can it be supposed that the Constitution intended to make the condition of those who were thereby made free, different from the condition of those who had been free before it was adopted.

It is claimed that Article 3rd, sec. 32, of the Constitution, abolishes the apprentice system in regard to negroes, because the laws on the subject are special, applying to negroes only. If this be the case, then the system of white apprenticeship is abolished also.

This section of the Constitution restricts the power of local and special legislation, and says it shall not apply to certain subjects. The inference is, that as to all not specified, the legislative power remains unimpaired. "*Expressio unius alterius est exclusio.*"

There is a difference between local and special legislation observed in this section. While no local or special law can be passed in the particular cases enumerated, it is provided that no special law should pass for any case for which there was a general law. Special laws are for a particular case. The apprentice laws are not special, although some are local.

The proceedings in the legislative and executive branches of the State Government, since the adoption of the Constitution, show that they regard the Constitution as perfectly consistent with the negro apprentice system, and that the laws on that subject are in force. Governor's Report, p. 4, &c. Journal of the House, 1865, p. 695. Bill No. 149, (House Bill, 1865,) to repeal apprentice system, secs. 31, 32, 33, 34 to 40, inclusive, of Art. 46 of the Code of Pub. Gen. Laws.

WEISEL, J., delivered the opinion of this Court:

The plaintiff in error was indicted, in the Circuit Court for Anne Arundel county, for having, on the 15th day of April 1865, unlawfully enticed and persuaded a negro ap-

prentice, named George Brown, to run away from the service of his master, Lancelot Warfield, Jr., she well knowing him to be such apprentice, and contrary to the form of the Act of Assembly, in such case made and provided, &c. She demurred to the indictment, and at the same time filed in Court an agreement signed by the State's Attorney for the county and her attorney, by which it was agreed that "the sole question to be submitted to the decision of the Court, was: Whether, by the terms of the Constitution of the State of Maryland of 1864, the several Acts of Assembly in force at the time said Constitution was adopted, in relation to the apprenticing of free negroes, were repealed by said Constitution, or whether they remain in full force?"

This demurrer was overruled by the Court. The prisoner, having leave to plead anew, pleaded not guilty to the indictment, and put herself for trial upon the judgment of the Court. Having been found guilty, and adjudged to pay a fine and be imprisoned in the county jail, she prayed this writ of error.

The question presented by the demurrer, and specially stated in the agreement filed with it, is the one to be considered and decided by this Court.

The laws of Maryland, relating to apprentices, are embodied in the 6th Article of the Code of Public General Laws, and those which regulate the apprenticing of free negro children, are found in the sections from 31 to 40, both inclusive, under the title of negro apprentices. · Under the 39th section, the indictment in this case was found. The first four of said sections provide that the several Orphans' Courts of this State shall, upon information being given to them, summon and cause to be arrested and brought before them the child of any free negro, and if it shall appear, upon examination before such Court, that it would be better for the habits and comfort of such child that it should be bound as an apprentice to some white person, to learn to labor, the Court shall bind such child as an apprentice to some white person, if a male, till he is of the age of twenty-

one years, or if a female, till she is of the age of eighteen years. But no negro child is to be bound under this Article, if the parent or parents have the means and are willing to support such child and keep the same employed, so as to teach habits of industry; and the parent or parents shall be summoned to be present at such binding; and in binding such children, the Orphans' Court shall give preference to those persons who may be selected by the parents, if there be any, and if not, by the children, if the person selected by them be approved by the Court.

The following sections relate to the nature and form of the indentures, provide for the assignment and transfer of the apprentice in certain contingencies, and for protecting the master in the enjoyment of the service of his apprentice, by enacting penalties for absconding, and for enticing him to run away.

The 4th Article of the Bill of Rights of 1864, declares that the inhabitants of Maryland are entitled to all Acts of Assembly in force on the 1st of June 1864, except such as may have expired, or may be inconsistent with the provisions of the Constitution then adopted: and it is contended that the Act of Assembly, or rather those provisions of the Code which regulate the apprenticing of free negro children, are inconsistent with the 24th Article of the Declaration of Rights, abolishing slavery in Maryland, and those sections in the Constitution which enforce it; and also with the prohibition in the 32nd section of Article 3, which forbids the General Assembly from passing any special law for any case for which provision has been made by an existing general law.

The 24th Article of the Bill of Rights is in these words: "Hereafter, in this State, there shall be neither slavery nor involuntary servitude, except in punishment of crime, whereof the party shall have been duly convicted; and all persons held to service or labor as slaves, are hereby declared free." Article 3, section 36, of the Constitution, provides that "the General Assembly shall pass no law, nor make any appro-

priation to compensate the masters or claimants of slaves emancipated from servitude by the adoption of this Constitution." And section 12 of Article 4 declares, that "Any person who shall, after this Constitution shall have gone into effect, detain in slavery any person emancipated by the provisions of this Constitution, shall, on conviction, be fined not less than five hundred dollars, nor more than five thousand dollars, or be imprisoned not more than five years; and any of the Judges of this State shall discharge, on *habeas corpus*, any person so detained in slavery."

It is very clear that the words *slavery* and *slaves*, used in these clauses of the Constitution, cannot be applied to a *free negro* apprenticed under the law as contained in the Code. The terms *slaves* and *free negroes* were or are well known in our legislation and jurisprudence, and they describe two distinct classes of our African population. Slavery embraced all such as were held by their owners in absolute servitude for life, or a term of years, with power to sell or dispose of the persons of the slaves at pleasure. Free negroes were and are now "those who were emancipated from slavery, or born free, but subjected to various disabilities and penal enactments." These last were repealed by the Legislature at its last session; and now the whole negro population of Maryland stand upon the same footing, and enjoy the same freedom from slavery. At no time was a negro apprentice regarded as or denominated a slave, within the meaning of that term, as applicable to the slave population of the State, which has been emancipated and made free by the present Constitution. The term *slave* was not more applicable to him than to the white apprentice bound to service under the other sections of said Article in the Code; the terms of service and the nature of the binding being the same, or similar in both cases. It was not pretended in the argument, on the contrary the idea was repudiated, that the system of apprenticing white children in Maryland has been interfered with by the present Constitution. Nor can it be successfully maintained that the phrase

*involuntary servitude*, embraces the condition of the negro apprentice in Maryland, bound out in compliance with the terms and requirements of our law. Those words (imported from the Ordinance of 1787, for the government of the North West Territory, and used generally since in all the Constitutions which have abolished slavery) are more comprehensive than the term slavery; embracing not only it, but all other modes of servitude imposed upon white or black, against the will either of the party subjected, or of the person to whom service may be due by such party in any of the relations of life. The exception annexed to it explains it. The labor imposed upon one convicted of crime, is involuntary servitude. Without the exception, a sentence to hard labor in a penitentiary would be prohibited by the Constitution, though the offender might be deprived of his liberty by simple confinement there.

The parent has a right to the custody of his minor child, and to the fruits of his labor, and can bind him out as an apprentice during his legal minority to another. But it frequently happens that such child is an orphan, without the means of education or support, or is in such a condition, by reason of the "indigence of the parent, or his vagrant or dissolute character, or other circumstances," as to render necessary or proper the hand and care of another to train him to habits of industry, furnish him suitable maintenance and education, and thus prepare him for the duties of life and the citizen. These are beneficent ends, required both for the child and society, of which it is a member. In such cases, there is an obvious necessity for the legislative power to interfere and regulate this relation, and to guard it from abuse. Laws on this subject were enacted in England early in the reign of Elizabeth, and have been continued with variations to the present time. All the elementary works treat of apprentices as a part of the relation of master and servant, and as thus regulated by law. The statute law of New York (which Chancellor KENT says may be taken as a sample, in all essential respects, of the general

law in the several States of this Union, on the subject, 2 *Kent's Comm.*, 262,) requires the consent of the parent or the constituted guardian "to every indenture, as well as the consent of the child, except in the case of paupers." In 1793, the Legislature of Maryland passed the Act (ch. 45) for the better regulation of apprentices, which recited that it had been found by experience that poor children, orphans and illegitimate children, for want of some efficient system, had been left destitute of support, and had become useless or depraved members of society; and that it would greatly conduce to the good of the public in general, and of such children in particular, that necessary instructions in trades and useful arts should be afforded them. This law, with its supplements, is the one which is codified in Article 6 of the Code, under the title of white apprentices. It does not consult the will of the child, and as to that of the parent, (except where he binds out his own child,) it simply provides that, if living in the country, he shall be summoned to appear before the Orphans' Court, and his inclination, so far as is reasonable, shall be consulted in the choice "of the person to whom the said child shall be bound." This law contains many wholesome provisions regulating the period and terms of the contract, its mode of execution and recording, and for enforcing its obligation upon master and apprentice, and guarding it against imposition. In 1839, an Act was passed for the better regulation of the free negro and mulatto children in this State, (ch. 35,) which makes provision for apprenticing the free negro children mentioned therein. This law is codified in the same Article of the Code, under the title of *negro apprentices,* and its material parts have already been embodied in this opinion. The same tribunal is to act in cases arising under this branch of the law as in the case of white apprentices; the same period of time is prescribed, beyond which the contract cannot run, until the age of twenty-one in males, and eighteen in females; the will of the parent is to be consulted, and "if he has the means and the willingness to support

the child, and keep the same employed, so as to teach habits of industry," the child is not to be bound, and the parent must be summoned to be present at such binding: and, after all, "it must appear to the Court, upon examination, that it would be better for the habits and comfort of such child that it should be bound as an apprentice to some white person, to learn to labor." The law further requires (as hereinbefore stated) that the Court, in binding such children, shall give preference to those persons who may be selected by the parents, if there be any, and if not, by the children, if the person selected by them be approved by the Court. In this respect the law is even more favorable than in the case of white apprentices.

A law, designed for the manifest good of the child, thus guarded, and consulting the will of the parent in the disposition to be made of him, cannot be regarded as imposing involuntary servitude upon those who are carefully bound out in compliance with its terms and provisions. In the execution of the law, all its requirements are, of course, to be studiously observed, in their true spirit and design.

Much stress was laid, by the counsel for the appellant, in the argument, upon that clause of the 32nd section of the 3rd Article of the new Constitution, which provides "that the General Assembly shall pass no special law for any case for which provision has been made by an existing general law."

This provision evidently has respect to the future passage of any special law in a matter already provided for by a general law. Besides, the sections of the Code relating to or ranged under the title of negro apprentices, cannot be denominated a special law. They are part and parcel of a general law found in the volume of the Code embracing the Public General Laws of the State, and can no more be regarded a special law, because applicable to one class of our population, than those sections which relate to white apprentices. We, therefore, do not consider that there is any inconsistency in this respect with this provision of the Con-

stitution, which would operate a repeal of those sections. The judgment of the Court below will therefore be affirmed.

*Judgment affirmed.*

( Decided November 1st, 1865.)