City of New Orleans vs. Vergnole.

---

## No. 8093.

### CITY OF NEW ORLEANS VS. JULIEN VERGNOLE.

Article 206 of the Constitution, providing that "No political corporation shall impose a greater license tax than is imposed by the General Assembly for State purposes," was not intended to act retroactively.

The Constitution took effect from and after the first day of January 1880.

Article 206 does not, therefore, affect the legality of the License ordinance of the City of New Orleans, No. 6253, passed on the 23rd of December 1879, under the laws then in force, and imposing certain municipal license taxes.

The same rules of construction apply to State Constitutions and to the Acts of the Legislature.

In order that a statute should be retroactive, the intention of the lawgiver in that respect must have been expressed in clear and unambiguous terms.

| 33 | 35 |
| 5J | 983 |
| 33 | 35 |
| 118 | 988 |

APPEAL from the First City Court of New Orleans. *Skinner, J.*

---

*Saml. P. Blanc*, Assistant City Attorney, for Plaintiff and Appellee.

Art. 206 has no retroactive effect; its terms are of the future. It does not affect licenses imposed prior to the Constitution going into effect, January 1st, 1880.

City of New Orleans vs. Vergnole.

The licenses sued for were imposed prior to January 1st, 1880, in obedience to a number of mandatory and unambiguous special laws governing the City of New Orleans. Acts of 1870, Ex. Ses., No. 7, Secs. 18 and 19, *et seq.*; Acts 1872, No. 73; Acts 1879, No. 38.

Laws are never to be taken as retroactive unless, by the rigor of their language, such intent is clearly expressed and admits of no doubt. 44 Cal. 303; 31 An. 781; 29 An. 416; Cooley, Taxation, p. 221; Wade, Retroactive Laws, §§ 33, 34, 35.

*R. H. Marr* and *J. R. Beckwith* for Defendant and Appellant.

The opinion of the Court was delivered by

Todd, J.. The defendant is appellant from a judgment of the First City Court of New Orleans, which condemns him to pay a license tax of one hundred dollars, assessed under the License Ordinance of the City of New Orleans, No. 6253, passed on the 22d of December, 1879.

By agreement of counsel, in the record, " the matter in controversy " is limited to " the question of the constitutionality and legality of the license imposed by said ordinance."

The payment of this license is resisted on the ground, that by article 206 of the present Constitution, State licenses are required to be graduated, and municipal corporations are prohibited from imposing a greater license than is imposed by the State ; that under Act 119 of 1880, his State license is only ten dollars ; in other words, the issue presented is, whether the ordinance referred to, imposing the license in question, was or not abrogated by the article of the Constitution cited.

The providing of an adequate revenue for the City of New Orleans has been a subject of much and frequent legislation by the State, as the matter of the maintenance and administration of the government of so great a city might well be deemed a subject of the highest importance, and one demanding the greatest wisdom and discretion on the part of the law-making power. By the proper statutory enactments, it was required that the City Council should, once a year, make an estimate of the annual expenses necessary to the proper administration of the government, and impose general taxes and licenses to meet such expenses.

Thus the act of 1870, extra session, sections 18 and 19, orders, " that the Council, at its *first meeting in December*, and on the same day annually thereafter, *shall impose* an annual license tax on trades, professions, callings," etc.

The same act further provides that the estimates thus adopted " shall be considered as the *appropriation* of the amount therein stated; and the Administrator of Public Accounts shall not audit, nor shall the Administrator of Finance draw or sign any check upon the Fiscal Agent therefor, of any claims, unless an appropriation therefor has been duly made in accordance with this act."

And Act No. 38 of 1879, passed by the same Legislature that called

the Constitutional Convention, *made it the duty of the Council*, on the second Tuesday of December, 1879, and of each and every year thereafter, to propose a detailed statement, exhibiting the amount of revenues for the ensuing year expected to be derived from taxes and licenses. It further provided that these estimates should be published for ten consecutive days and, at the first regular meeting of the Council thereafter, it should proceed to adopt the estimates made and "*then and there*" levy a tax, and provide for the collection of the same; and for the realization of the license tax, for the purpose of meeting the liabilities and expenditures of these estimates, which estimates are expressly declared as "sacred to the object of their appropriation until the liability or debt provided for shall have become paid or extinguished."

We have cited only some of the acts on this subject, and specially referred to a few of the leading provisions of those cited; deeming this reference necessary in order to discover the main purposes of their enactment, and the significant and most important features of this legislation. It is apparent from the reference, that the direct object of these laws was to insure the greatest possible care and deliberation in making up the budget of receipts and expenditures; provide for the publication of the same; adopt the most effective method for the collection of the revenue; and fix the time at which, or within which, all this must be done. It is evident that the whole was to constitute a plan to carry out the object in view, of providing an adequate revenue for the proper administration of the city government; and upon which plan all the contemplated operations of that government, and all contracts and agreements relating thereto and the faith of such contracts and agreements were to be based.

The parts of this plan or system, made up of these different requirements, were so connected and intervoven, that to disturb one would be, in effect, to disarrange and confuse the whole. Thus to illustrate : The amount required for all the various objects of the government is to be ascertained; an estimate made of the sums to be derived from licenses, and the total amount needed, and which the license tax and other sources may fail to supply, is to be made up by general taxes, and the rate of taxation to be determined by these data. The accomplishment of the important objects in view, and the complete execution of the measures devised, must, of necessity, largely depend upon the *time* at which they are inaugurated. Abrogate the licenses imposed, and you destroy the source from which means are to come to meet some expense or supply some want that is sure to occur, and thus effectually repeal appropriations for purposes that must arise. Change the date or period at which all this must be done, and you abridge the time necessary to insure the successful working of the plan. In fine, destroy or

disarrange any of these essential parts or elements, and you effectually break down the whole.

There is no question but that all the steps required by the laws mentioned were taken in strict conformity thereto ; and the ordinance attacked, under which the licenses were imposed, was entirely regular, and sanctioned by the legislative enactments referred to; but the question is, whether this ordinance was repealed or abrogated by the present Constitution.   It would seem strange indeed, if the Convention should intentionally destroy or impair the plan or system, so long established, for providing a revenue for the City of New Orleans, by the abrogation of the laws and ordinances on which it rested.   Nor are we warranted in coming to such conclusion, unless such intention is unmistakably shown by the plain letter of the Constitution.   The ordinance, under which the license in this case was sought to be collected, was adopted and *went into effect* on the 23d of December, 1879.   Was it repealed by the Constitution ?   Article 262 of that instrument provides that if a majority of the voters of the State should ratify the Constitution, that the Governor should make proclamation of that fact; and further declared, " and *thenceforth* this Constitution shall be ordained and established as the Constitution of the State of Louisiana."   The proclamation was accordingly made on the 31st of December, 1879, and the Constitution took effect from and after the 1st of January, 1880.   The following is the article, or the clauses thereof, mainly relied on as repealing the ordinance in question.

" Art. 206.   The General Assembly may levy a license tax, and in such case, shall graduate the amount of such tax to be collected from persons pursuing the several trades, professions, vocations and callings."

" No political corporation shall impose a greater license tax than is imposed by the General Assembly for State purposes."

Is this article to be construed as having a retrospective operation, or was it prospective only ?

Article 8 of the Civil Code lays down a very important rule of construction, as follows :

" A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."

This article merely dictates an universal rule of construction, recognized in every known system of jurisprudence.   Thus a distinguished law writer, treating of this subject, has said :

" One of the *cardinal rules* by which courts are governed in interpreting statutes is, they must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent

is necessarily implied." "Every reasonable doubt as to the intention of the law-maker is resolved *against* rather than *in favor of* the retroactive operation of the statute."

"The mere fact that parties contract, with actual or constructive notice of an *impending* change in the law, raises no presumption that the contract is made with reference to such change." Wade, Retro-active Laws, §§ 33, 34, 35.

This last quotation meets the objection of the counsel to the ordinance, that it was passed after the vote on the ratification had been taken, though not declared when the ordinance was passed.

The identical rule of construction unquestionably prevails in regard to constitutional provisions as with reference to statutory enactments.

Thus the same writer (Wade) declares :

"This principle is not only applicable to legislative acts, but to State Constitutions, and, in fine, to all written law. Being a rule of construction, it may be applied to every conceivable expression of the will of the law making power where there is a doubt, whether it was intended to take effect prospectively or retrospectively. An illustration as to its application to State Constitutions is, when they contain provisions prohibiting the Legislature from authorizing counties, or other subordinate branches of the State government, to assume certain liabilities. Such provisions cannot affect the validity of special statutes, already in existence, authorizing the assumption of such liabilities, but will be construed as prospective." And he cites the following authorities as sustaining this proposition : 85 Pa. St. 357; 81 Pa. St. 482; 9 W. Va. 162; 23 Md. 503; 41 Mo. 453.

Sedgwick lays down the same principle; "Sedgwick," Construction of Statutory and Constitutional Laws, p. 19. See, also, Cooley on Taxation, p. 221.

This rule of construction has been expressly sanctioned and confirmed by many decisions of the State Courts.

In the case of Oakland vs. Whipple, 44 Cal. 303, it was held : "Where taxes are levied under a law which is repealed by a subsequent act, unless it appears *clearly* that the Legislature intended the appeal to work retrospectively, it will be assumed that it intended the taxes to be collected according *to laws in force when they were levied.*"

And in our own State, in a recent case decided by our immediate predecessors, case of the Rhenish Westphalian Lloyds, 31 A. 781, it was said : "Turning to the provisions of the act, we find it is couched in terms prospective only. It declares : No parish or municipal corporation throughout the State *shall assess* any license tax over $500, etc.; that the act shall take effect from and after its passage, 9th February, 1879. Here, then, are no words looking to the *past.* Its operation is,

by its very terms, for the *future*. It does not say that no corporation shall *collect*, but that it shall not hereafter *assess*, i. e., *levy, or impose* a greater tax."

This language is peculiarly applicable to the case at bar. For in the case cited, the issue was very similar to the one here presented and it was therein expressly decided:

"That an act of the Legislature, which declares that no municipal corporation shall assess any license tax on certain persons over $500, and prescribes that the act shall take effect from and after its passage, cannot be construed as retroactive; but applies only to future assessments of such tax, and does not repeal any municipal ordinance assessing a larger tax, which was enacted by the corporate authorities before the passage of the act."

Applying this rule of construction to the article of the Constitution (206) relied on as repealing the ordinance in question, the reasonableness and correctness of the rule but becomes the more apparent. It declares that " the General Assembly *may* levy a license tax, *and in such case*, shall graduate the amount of such tax, etc., and that "no political corporation *shall* impose a greater license tax than is imposed by the General Assembly for State purposes."

It will be seen, that while the language of this article is clearly prospective, it is at the same time not imperative, but merely permissive; the Legislature *may*, in its discretion, or at its option, levy such license tax. If the construction of this clause contended for by the defendant's counsel be correct, it would follow that although the laws in force at the time made it obligatory on the Council to pass them at the time fixed, such ordinance imposing licenses under declared penalties, the Council should have refused to do so, and awaited the taking effect of the new Constitution, not then officially known to be adopted; and then wait further to ascertain whether the General Assembly, to convene under that Constitution, would or not, in its discretion, levy a State license tax ; and then, if such tax *was* levied by the State, either to wait again till the appointed time, at the end of the year, to assess the licenses for the year then about expiring, or to make such a levy on a day not authorized by law, and by such unauthorized action provoke resistance to the payment of the licenses thus irregularly assessed. The inevitable result of all such delay and inaction would have been the loss to the city of all its revenue from licenses, and the consequent utter derangement of its financial affairs, involving the utmost confusion and embarrassmen- in the administration of the city government, if not its complete destruct tion. Can any reasonable mind believe, for a moment, that the convention that framed the Constitution intended to inflict such a disaster on

the city ? Yet we would have to believe so if we gave the article in question. the construction contended for.

The conclusion is irresistible to our minds, that the article cited was purely and entirely prospective in its operation, and its effect as to the City of New Orleans was suspended until the State, through its legislative department, had adopted a system of State licenses, and then only required the city government, in its subsequent assessments, at times regularly appointed therefor by previous laws, to comply with the provisions of the article ; and such action on the part of the city authorities to have effect only for the years respectively next ensuing thereafter.

Article 218 of the Constitution is also cited by the able counsel of defendant as sustaining his views. It needs only an inspection of this article to discover that its true meaning is that it extends all the provisions of the Constitution relating to the collection of State taxes and to tax sales, parish, district and municipal taxes. Nor do we think the decisions of the Federal Courts, to which he has referred, shake, in the least, the authorities cited above in support of our conclusions. A critical examination of those decisions satisfies us that they are not applicable to the questions at issue in this case, but refer more particularly to penal statutes and the effect of their repeal, which admit of a different and more vigorous rule of construction than can be applied to other laws.

It is, therefore, ordered that the judgment appealed from be affirmed, with costs.