OSCAR LESER ET AL., CONSTITUTING THE STATE TAX
COMMISSION OF MARYLAND; ALFRED W. GAVER,
SUPERVISOR, ETC., ET AL., CONSTITUTING THE BOARD OF
COUNTY COMMISSIONERS OF FREDERICK COUNTY, MD.,

*vs.*

DAVID LOWENSTEIN AND CHARLES WERT-
HEIMER.

*Statutes: constitutionality of—; rules; duty of courts. Amend-
ment to Constitution: when not self-executing; effect on ex-
isting laws; Art. 15 of Declaration of Rights as amend-
ed by Chap. 390 of Acts of 1914; not repealed by
Chapter 841 of Acts of 1914. State Tax Com-
mission: authority of; general reassess-
ment; formulation of plan and
rules; effect on County Com-
missioners, etc.*

In providing for a general reassessment of real estate by
Chapter 629 of the Acts of 1916, throughout the State, the
Legislature was not bound by the Constitution to include Balti-
more City, and put the city to the expense of reassessment,
when it was known that real property in that city is period-
ically reassessed and assessed according to its real value.   p. 248

Neither under that statute nor under the Constitution, is it
necessary in providing for the reassessment of Baltimore City
and the counties of the State, for the reassessment to be at one
and the same time.                                            p. 247

In the absence of an intention expressed in a constitutional
amendment that it shall be retroactive, such amendment has
only a prospective effect.           .            ·          p. 251

· In case of such reassessment no notice need be given other
than notice of time and place given by the Act itself.       p. 248

Chapter 390 of the Acts of 1914, adopted by the people in
November, 1915, as an amendment to Article 15 of the Declara-
tion of Rights, has no retrospective effect.                 p. 250

The provision in this amendment declaring that *all taxes* hereafter to be levied by the State for the support of the general government and by the counties and the City of Baltimore for these respective purposes, shall be uniform as to land, within the taxing districts, refers to future levies of taxes and not to assessments.                                   p. 250

Where an amendment to the Constitution is not self-executing, but requires the Legislature to discharge a duty, such amendment leaves the existing laws that are not in conflict with it in full force and effect until the required legislative action is taken.                                            p. 251

Where an Act of the Legislature is assailed as repugnant to some provision of the State or Federal Constitution, the repugnancy must be clear in order to justify a court in striking it down as being unconstitutional; a mere doubt as to the power of the Legislature is not sufficient.                      p. 255

Legislation passed subsequent to an amendment to the Constitution, which is not in conflict therewith, or in conflict with some provision of the State or Federal Constitution, can not be set aside by the courts.                          p. 255

A conflict between a statute and the Constitution is not to be implied, and where the meaning of the Constitution is clear, the court must, if possible, give the statute such a construction as will enable it to have effect.                pp. 255, 262

The power given to the State Tax Commission by the Act of 1916, Chapter 629, to formulate a "uniform plan for the assessment of property," did not constitute an illegal delegation by the General Assembly of the duty imposed upon it by the amendment to Article 15 of the Declaration of Rights "by uniform rules (to) provide for separate assessment of land and classification and sub-classifications of improvements on land and personal praperty."                       pp. 247-263

The power to order a reassessment of property having been granted the State Tax Commission by Chapter 841 of the Acts of 1914, the power to formulate the "uniform plan," mentioned in the Act of 1916, "is to be referred to such administrative methods or procedure as the Commission might adopt for mak-

ing the assessment in accordance with, and in conformity to, existing laws on the subject."        pp. 261-263

An entire Act ought not to be declared unconstitutional merely because one or more of its provisions are void, unless these are so connected in subject-matter, meaning and purpose that it can not be supposed that the Legislature would have passed the Act without such particular provisions.        pp. 263-264

*Decided September 16th, 1916.*

Appeal from the Circuit Court for Frederick County. In Equity. (URNER, C. J., PETER and WORTHINGTON, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Edw. M. Hammond* and *Albert C. Ritchie, the Attorney-General,* for the appellants.

*Leo Weinberg,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The State Tax Commission of Maryland, acting under the powers which it claimed to have been conferred upon it by the Act of 1914, Chapter 841, and the Act of 1916, Chapter 629, determined to order a general assessment of all taxable real estate in the counties of Maryland, and it directed that assessors be appointed in all the counties of the State to assess real estate only within said counties. The Board of County Commissioners of Frederick County, in obedience to the orders and directions of the Commission, was about to appoint the several assessors for Frederick County, and were about to instruct them to assess only real estate situated within the said county. The assessment in all the counties was to be limited to real property. It was not proposed that there should be, under the present orders and instructions of the State Tax Commission, an assessment of any property

in the City of Baltimore. The appellees, who are residents and taxpayers of Frederick County, filed a bill in the Circuit Court for that county against the State Tax Commission of Maryland, Alfred W. Gaver, the Supervisor of Assessments for Frederick County, and the County Commissioners of Frederick County, in which it was prayed that an injunction be issued restraining the defendants from proceeding to make any assessment on any property in that county under the order and direction of the State Tax Commission. The defendants filed a demurrer to the whole bill, and this appeal was taken by all the defendants from the order of the lower Court overruling the demurrer.

It is contended for the appellees that the State Tax Commission of Maryland has no power under the Acts of Assembly, under which it is proceeding to act, to make the proposed assessment, and, therefore, its action is *ultra vires,* illegal and void.

Four reasons have been urged in support of the plaintiffs' contention. Three of these are stated in the opinion of the Court below and were decided adversely to the plaintiffs. That part of the opinion which deals with these three objections is here transcribed:

"The point mainly urged by the bill of complaint in opposition to the proposed reassessment is that it will not apply equally to all portions of the State, but that being restricted to the counties by the terms of the statute, all property in Baltimore City will be excluded from the revaluation. It is contended that such a discrimination renders the Act invalid. We can have no hesitation in overruling this contention. There is no constitutional limitation upon the power of the Legislature which requires it to include in a single statute the provisions through which it intends to secure an equal and uniform valuation of property for the purposes of taxation. There are separate enactments by which property in Baltimore City is subjected to a continuing process of revision in order that it may be assessed for State and municipal taxes ac-

cording to its real value. If the Legislature was convinced that this standard has been uniformly observed in the assessment of Baltimore City property, but that a lower measure of taxable value has been applied elsewhere in the State, it was not, in our opinion, constitutionally necessary to subject the city to the expense of a superfluous reassessment merely because the county valuation may need readjustment.

"The objection that the proposed reassessment is illegal because the State Tax Commission has given instructions, as alleged, that it shall apply only to real estate, seems to us to be likewise untenable. The Act of 1916, under which the reassessment has been ordered by the Commission, and whose validity as a statute is assumed for the purpose of this objection, does not direct that all classes of property shall be revalued at the same time, and the Constitution does not obligate the Legislature to impose such a requirement.

"The contention that no sufficient notice of the reassessment is prescribed for the benefit of the owners of the property to be valued is met by the provision of the Act of 1914 for a hearing at the instance of any taxpayer, as to the assessment of his property, before the County Commissioners, and on appeal, before the State Tax Commission. It has been held by the Court of Appeals in the case of *Monticello Company* v. *Baltimore City,* 90 Md. 428, that personal notice of an assessment of property for taxation is not necessary. 'It is sufficient,' said the Court, 'if notice be given by a law designating the time and place where parties may contest the justice of the valuation.' "

We fully concur in the conclusions reached by the Court below upon these objections, and in the principles of law upon which the conclusions rest.

But the Court sustained the plaintiffs' right to an injunction upon the facts stated in the bill upon the ground that the Act of 1916, Chapter 629, was void and that no general assessment could be made under the Act of 1914, Chapter

841.   The Act of 1916, Chapter 629, was held to be void because it contained an unlawful delegation of power to the State Tax Commission to provide uniform rules for separate assessment of land and classification, and sub-classifications of improvements on land and personal property.   The Court properly held that this was a duty and power invested solely in the Legislature under Article 15 of the Declaration of Rights, as amended by the Act of 1914, Chapter 390, and adopted by the people in November, 1915.   The sole ground upon which the Act of 1916, Chapter 629, was held void was that by Section 249 of that Act, there had been an unlawful delegation of that duty and power to the State Tax Commission.   The Court further held that no general re-assessment could be ordered by the State Tax Commission until the Legislature had provided, as was its duty to do, the uniform rules for assessment and classification enjoined by the Constitutional Amendment above referred to.   If the legal position taken by the lower Court be sound, the conclusion reached by it is correct, and there can be no general re-assessment of property in the State until the Legislature shall have provided the rules contemplated by the Amendment.

We are unable to agree with the conclusion of the lower Court upon this branch of the case.   It gives an unwarranted scope and effect to the amended Article of the Declaration of Rights.   That amended Article is here inserted:

"That the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the government; that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform

as to land within the taxing district, and uniform within the class or sub-class of improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

The questions which lie at the very threshold of the discussion are: *First,* what effect did this amendment have upon the law of the State existing at the time it became effective? *Secondly,* what limitations and restraints did it impose upon the power of the General Assembly with respect to future legislation? As to the first question it is undoubtedly true that it abrogated or superseded Article 15 of the Declaration of Rights as it appeared in the Constitution of 1867. There is no expression in the amendment to indicate that it was the intention of the people to give it a retroactive effect, and in the absence of such an intention the accepted rule of construction requires that it shall be giveen a *prospective* and not a *retroactive* effect. Some of its provisions are prohibitory and self-executing, and require no act of the Legislature to make them effective:

(1) It prohibits the poll tax;

(2) It declares that paupers should not be assessed for the support of the government. These provisions are found in the Fifteenth Article of the Declaration of Rights of 1867;

(3) It declares that all *taxes hereafter* provided to be levied by the State for the support of the general State government, and by the counties and by the City of Baltimore for their respective purposes, shall be uniform as to *land* within the taxing districts, etc.

This provision refers not to *assessments,* but to *future levies* for taxes. The provision of the amendment which declares "that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal

property, as it may deem proper," imposed a clear, mandatory duty upon the General Assembly, which it alone could discharge and which it could not delegate, but it was not a self-executing provision. The General Assembly neglected to discharge that duty, but it does not follow as a result of its failure of duty in this respect, that any valid laws relating to assessments, not in conflict with the amendment, may not be availed of for that purpose. The authorities appear to be uniform in support of the proposition that the failure of the Legislature to discharge a duty of the character imposed by this amendment leaves the valid and existing laws, not in conflict with any of its provisions, in full force and effect.

It is said in *Cooley on Constitutional Limitations* (6th Ed.), 98, that: "But although none of the provisions of a constitution are to be looked upon as immaterial or merely advisory, there are some which, from the nature of the case, are as incapable of compulsory enforcement as are directory provisions in general. The reason is that, while the purpose may be to establish rights or to impose duties, they do not in and of themselves constitute a sufficient rule by means of which such right may be protected or such duty enforced. In such cases, before the constitutional provision can be made effectual, supplemental legislation must be had; and the provision may be in its nature mandatory to the legislature to enact the needful legislation, though back of it there lies no authority to enforce the command. Sometimes the constitution in terms requires the Legislature to enact laws on a particular subject; and here it is obvious that the requirement has only a general force; the Legislature ought to obey it; but the right intended to be given is only assured when the legislation is voluntarily enacted. Illustrations may be found in constitutional provisions requiring the Legislature to provide by law uniform and just rules for the assessment and collection of taxes; these must lie dormant until the legislation is had; they do not displace the law previously in force, though the purpose may be manifest to do away with

it by the legislation required. * * * A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

In the notes to the case of *City of Newport News* v. *Woodward,* 104 Va. 58, reported in 7 *Am. & Eng. Anno. Cases,* 625, it is said: "A provision which is complete in itself and needs no legislative enactment to carry it into effect or provide means for its enforcement, is self-executing. * * * Self-executing provisions are chiefly characterized by language of the detailed character which is intended to be operative, and which would be used by a Legislature were it enacting such a provision into law. * * * On the other hand, if a provision lays down general principles or is a general one directed to the Legislature, or one which covers an entire subject in a few words, or which fixes only limits of action, or provides no rule for its enforcement, or vests a wide discretion as to the manner in which the mandate shall be carried into effect, it is not self-executing, but it belongs to that class of powers which are dormant and inoperative until validity and vigor are imparted to them by specific action of the legislative department of the government. * * * Constitutional provisions which are negative or prohibitive in character, their object being to suppress an existing evil, have as a general rule been held to operate immediately *ex proprio vigore,* since they need no legislation to carry the mere prohibition into effect; and provisions which are addressed to the legislative branch of the government have generally been held not to be self-executing. * * * A constitutional provision that the Legislature shall provide a uniform rule of taxation is not self-executing."

The rule is stated in 6 *R. C. L.,* secs. 52 and 54, as follows: "A provision may be mandatory without being self-executing.

The question has been said to be one of intention in every case. A constitutional provision is self-executing where no legislation is necessary to give effect to it. * * * It has been said that the question in every case is whether the language of a constitutional provision is addressed to the courts or the Legislature. A provision that the Legislature should make suitable provisions for carrying a constitutional amendment into effect is obviously addressed to the Legislature and is indicative of the intention that such amendmeent should not become effective until made so by an Act of the Legislature. This may be illustrated by a constitutional provision that the Legislature should provide by law for a uniform and equal rate of assessment and taxation, and should prescribe such regulations as should secure a just valuation. Appropriate legislation is clearly necessary to carry these directions into effect."

In *Davis* v. *Burke,* 179 U. S. (L. Ed.), 399, the rule is thus stated: "Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population, or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution."

These principles appear to be supported by an unbroken line of decisions, many of which are referred to in the authorities from which we have quoted.

That such a provision as that under consideration does not affect existing laws not in conflict therewith is equally well settled.

In 8 *Cyc.* 760, it is said: "Where future legislation is necessary in order to give force and effect to a constitutional provision, all existing laws remain in force until such legislation is enacted, except such laws as are repugnant to such provision when it was adopted. * * * While self-executing constitutional provisions operate wholly independent of legis-

lative action, a provision that is not self-executing has only a moral force so far as legislative action is concerned; and until such action is taken, existing laws remain in full force and operation."

It is stated in section 27, 6 *R. C. Law*: "When a new constitution is established it is customary to insert a provision that all statutes in force and not inconsistent with the new constitution shall continue until amended or repealed by the Legislature, though it is generally recognized that such laws remain in force without an express provision to that effect. Although a new constitution may contain prohibitions as to special legislation, it will not be construed as effecting a repeal of, or making inoperative, special laws passed before its adoption. When a constitutional provision, instead of being restrictive, permits greater freedom of action the same principles seem to apply. Thus it has been held that a constitutional provision empowering the voters of every city to enact and amend their municipal charter does not, of itself, alter existing charters. All statutes which are actually inconsistent with a new constitution are repealed by implication, unless they constitute contracts within the meaning of the federal provision prohibiting an impairment of the obligation of contracts. Where, however, the constitutional provision is not self-executing a state statute is not thereby superseded."

This rule has been adopted and applied. *Williams* v. *Detroit,* 2. Mich. 560; *Doherty* v. *County of Ransom,* 5 N. D. 1; *Engstad* v. *Grand Forks County,* 10 N. D. 54; *Supervisors* v. *Stout,* 9 W. Va. 706; *New Central Coal Co.* v. *George's Creek & Iron Co.,* 37 Md. 537; *Brown* v. *State,* 23 Md. 503, and other cases. We take the principle to be well settled.

There is no existing provision of the law upon the subject of assessment, valuation, and classification in conflict with any provision of the amendment.

As to the second question. It was said in *Kenneweg* v. *Allegany County,* 102 Md. 119, that: "The General Assembly possesses all legislative power and authority except in

such instances, and to such extent as the Constitutions of
the State and of the United States have imposed limitations
and restraints thereon. In this respect the Legislature dif-
fers from the Congress of the United States which has, and
can exercise, only such power as the Federal Constitution
expressly or by necessary implication confers upon it. In
the General Assembly plenary power to legislate is vested,
unless restrained by the Constitution. In the Congress the
power to legislate is not vested, unless confided by the Fed-
eral Constitution. In the State Constitution we look, not
for the power of the General Assembly to adopt an enact-
ment, but for a prohibition against its adoption. In the
Federal Constitution we look, not for the prohibition, but
for the delegated power to enact a measure." The legisla-
tion passed subsequent to the adoption of the Amendment
which is not in conflict therewith or in conflict with some
provision of the State or Federal Constitution cannot be set
aside by the Court. And where an Act of the General As-
sembly is assailed as repugnant to some provision of the
State or Federal Constitution, the repugnancy must be clear
to justify the Court in striking it down. It will never do
so in a doubtful case. A mere doubt as to the power of the
Legislature is not sufficient. The Court must be satisfied
that there is a plain, clear conflict between the Act and the
Constitution, and where this appears the duty of the Court
to sustain the Constitution and pronounce the Act void is
plain. In *Baltimore* v. *State,* 15 Md. 453, the Court said:
"And although, when the Court is satisfied that the Legisla-
ture has exceeded its authority, we would no more falter in
denouncing the Act as void, than we should hesitate in de-
ciding the most important matter within our jurisdiction,
yet, in cases of doubt on the question of power, it would be
improper to interfere. We could not do so without assum-
ing (when it did not clearly appear) that the Constitution
had been violated, which should not be predicated of an-
other department in the discharge of functions peculiarly its
own, as the law-making power. This is the settled doctrine

in this State, and, as far as we are informed, in every case in which the question has been considered. *Regents* v. *Williams,* 9 G. & J. 365; *State* v. *B. & O. R. R. Co.,* 12 G. & J. 399."

The Courts have always been careful in the exercise of this power and have established the rule that: "A statute may be good in part, while other parts are invalid. If a portion be unconstitutional, the Court is not authorized, for that reason, to declare the whole void." *Davis* v. *State,* 7 Md. 151. In *Commonwealth* v. *Hitchings,* 5 Gray, 482, where the same rule of construction was adopted, the Court said: "The constitutional and unconstitutional provisions may even be contained in the same sections, and yet be perfectly distinct and separable, so that the first may stand, though the last fall. The point is, not whether they are contained in the same section, for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance."

In the light of these principles we shall now consider the law, so far as it relates to the question before us, as to valuation, assessments and classifications, as it existed prior to and at the time of the adoption of the amendment. The main body of this law is found in Article 81 of the Code and in the Act of 1914, Chapter 841. Article 81 of the Code declares what property shall be taxable in this State and contains ample rules for assessment and classification of all property of any description, except such as is therein exempt. It provides for the separate assessment of land and improvements, and it clothes the Boards of County Commissioners with powers to assess and re-assess all taxable property and authorizes them to appoint assessors. The method of assessment or valuation of all kinds of property is fully prescribed in the various sections of Article 81. They are quite familiar, and it would be useless to quote them in this opinion. The Act of 1906, Chapter 320, codified as section 204 of Article 81 of the Code conferred upon the Boards of County Commissioners the power "to value and assess all personal

property and to revise all valuations and assessment of real
property in their respective counties, and to lower or increase
said assessments of real and personal property, and to take
steps for the discovery of all unassessed property of every
kind," and they are authorized to appoint such agents, asses-
sors and clerks as may be required for that purpose. It fur-
ther provides that: "All the penalties and requirements pre-
scribed in sections 173 to 203, both inclusive, as the same
were enacted, and so numbered by the Acts of 1896, Chapter
120; 1896, Chapter 140; 1896, Chapter 142, and 1896,
Chapter 143, so far as the same are applicable, both as to
the owners of property and assessors or clerks appointed by
the respective Boards of County Commissioners, and the
said boards themselves, whether sitting to hear appeals or
otherwise, shall be in force as fully as if said sections as con-
tained in said Acts were herein re-enacted, and apply to all
assessments and valuations made by said assessors or County
Commissioners at any time under this article, and particu-
larly to the listing of personal property in the year 1908,
and every six years thereafter, so far as the same may be
applicable and practicable." An examination of section 173
and subsequent sections of the Act of 1896 continued in
force by the Act of 1906, will show that definite, precise and
full requirements are therein set out for making the assess-
ments.

The Act of 1910, Chapter 300, providing for a general
revaluation and reassessment of property in all the counties
of the State, except Somerset and Worcester Counties, de-
clared in section 31: "That all Public General Laws and
Local Laws now relating to revenue and taxes, or to the
assessment or re-assessment of property for purposes thereof,
not inconsistent with this Act or any of the provisions thereof,
shall remain in full force, virtue and effect notwithstanding
this Act; and in so far as this Act may be applicable after
the special general assessment in the counties of the State to
any part of the State, in addition to the Public General and
Local Laws, entitled 'Revenue and Taxes,' now in force, the

said provisions of this Act so applicable in the future shall remain in force." This Act also contains full and detail requirements for the making of the assessment.

The Act of 1914, Chapter 841, amended Article 81 of the Code by adding twelve new sections thereto, to follow immediately after section 232. The object of the Act, as stated in its title, was: "To create a State Tax Commission to provide for the equalization of assessments throughout the State of Maryland, and to provide for the review of all property for purpose of assessment at least once in every five years; to define the duties and other powers of the State Tax Commission; to provide for procedure and appeals in cases affecting taxation; to provide for the appointment of a supervisor of assessments in each county and the City of Baltimore; to provide for the payment of the salary of the supervisor of each county and Baltimore City; and to provide for the abolishing of the office of State Tax Commissioner, and to substitute the State Tax Commission for the State Tax Commissioner, and to appropriate a sum of money annually to pay the salaries and expenses of the State Tax Commission by adding twelve sections to Article 81, title 'Taxation,' of the Code of Public General Laws, as set out in the Code of 1912." By section 233 the State Tax Commission of Maryland was created, its members designated and their tenure of office and compensation fixed. Section 234 prescribed the duties and declared the powers of the commission. Among its duties and powers are these:

(1) To have general supervision over the administration of the assessment and tax laws of the State.

(2) To have general supervision over all supervisors of assessments and to have the final determination of assessments of the property in all the counties, cities, towns and villages of the State, *to the end that all taxable property shall be placed upon the assessment books and equalized* between persons, firms and corporations in all the counties, districts, cities, towns and villages of the State, so that all persons,

firms and corporations shall be assessed alike for like kinds
of property. In case any property which under the law is
subject to taxation has not been assessed, such property may
be placed on the books at any time and shall be subject to
taxation for the current and previous years, not exceeding
four years in all, in the same manner as other property is
subject to taxation.

(3) To establish the form of the reports of assessments,
assessment books and collection books, and of schedules,
notices and other papers, and forms for financial and statis-
tical reports of County Commissioners and the Appeal Tax
Court of Baltimore City to the State Tax Commission. The
State Tax Commissioon is empowered to require all these
officials to use all forms furnished or prescribed by the State
Tax Commission, and shall have power to examine all books
of local governing bodies, assessing officials and tax collectors.

(4) To provide for a uniform system of accounts to be
used by all collectors of State taxes and to require the use
thereof.

(5) To formulate, whenever the commission shall deem it
practicable, standards or units for the assessment of various
kinds of property, and to issue instructions to local super-
visors of assessments in regard thereto and to require the use
thereof, to confer with County Commissioners and the Appeal
Tax Court of Baltimore City, and visit each county as often
as necessary.

(6) *To enforce and execute a continuing method of assess-
ment and to require that all property in the State be reviewed
for assessment at least once in every five years.*

It is provided by section 244, that "the power to assess
shall in all cases include the power to *classify* for taxation,
and the power to review an assessment on appeal shall in all
cases include the power to review any question of classifica-
tion."

We think there can be no doubt that it was the intention
of the General Assembly in passing the Act—an intention

disclosed by the title of the Act, and by the broad and comprehensive duties and powers conferred upon the commission—that there should be an assessment and equalization of assessment of all taxable property in the State for the purpose of taxation, and that it intended to confer, and did in fact confer upon the commission the power to order a general reassessment as an appropriate means of accomplishing the purpose for which it was created. The main object of the creation of the commission was to secure the equalization of assessments, and it was charged with the duty "to require that all property in the State be reviewed for assessment at least once in every five years." It would seem to be clear, both from the object of the Act and from the enumerated powers conferred upon the commission, that it has the power to order a general assessment, and if such irregularities exist in the assessments in the counties of the State as to require a reassessment to be made in order to secure a fair and uniform basis for taxation we think the powers conferred upon the commission are broad enough and were in fact intended to confer upon the commission the power to order a general reassessment as an appropriate means of accomplishing the objects for which it was created.

The machinery provided by the Act by which its objects were to be attained and the duties and powers of the Commission discharged and effectively executed were as follows:

The assessments in the first instance were to be made by the County Commissioners or other proper authority in the several counties. In each county of the State and in the City of Baltimore the State Tax Commission was required to appoint in the manner provided a supervisor of assessments. Each county supervisor was charged with the duty of general supervision over assessments of all property in the county. He was not required to make assessment, but he was given the power and charged with the duty to appeal to the State Tax Commission from any assessment or ruling which he might consider improper. It was made his duty to visit at frequent intervals every district, and obtain all

necessary data and information, keep posted on sales in the
county and conditions attending sales and wherever possible
to report the sales and the consideration of all transactions
within twenty days to the State Tax Commission and to the
County Commissioners. It was provided, that, "from these
reports and all evidence obtainable, it shall be determined
by the respective County Commissioners whether the assess-
ment against any property or whether any unit of assess-
ment values used in any district or county shall be changed,
and in case the data submitted is not satisfactory either to
the State Tax Commission or to the County Commissioners,
either shall have the power to obtain additional data, and in
case the assessment so determined upon is not satisfactory,
the State Tax Commission or the County Commissioners
shall order a new valuation." Provision was made for the
appointment of a supervisor of assessments in Baltimore
City, whose duties and powers are defined. In case of fail-
ure of the State Tax Commission to agree upon any assess-
ment with the County Commissioners, or with the Appeal
Tax Court of Baltimore City, as the case might be, it was
provided that the determination of the Commission should
be final. Provision was also made for hearing by any tax-
payer before the County Commissioners or the Appeal Tax
Court as to any agreement; for an appeal from any decision
of either body to the State Tax Commission by any tax-
payer, or by the Supervisor of assessments; for an appeal to
the Courts on questions of law from decisions of the State
Tax Commission. The remaining provisions of the Act have
no material bearing upon the question under consideration.

The Act of 1916, Chapter 629, did not grant to the State
Tax Commission the power to order a general re-assessment
and was not passed for that purpose. That power had al-
ready been conferred upon the Commission by the Act of
1914, Chapter 841. The manifest object and purpose of
the Act of 1916 were to provide supplementary machinery
for the assessment provided for by the Act of 1914,—by
which the power granted by that Act might be more effec·

tively executed. All its provisions are purely administrative. It added six new sections to Article 81 of the Code to follow section 247 and to be known as sections 248, 249, 250, 251, 252 and 253. It was provided by section 248, that "at such time as shall be ordered by the State Tax Commission, each of the several Boards of County Commissioners in the State of Maryland shall appoint such number of county assessors as shall be ordered by the State Tax Commission." Section 249 is here transcribed:

> "The uniform plan for the assessment of property which shall be formulated by the State Tax Commission shall be followed strictly by the Board of County Commissioners of the several counties in the State, together with all County assessors, not only for the assessment provided for in this Act, but for all subsequent reassessments and reviewal of assessments authorized by Chapter 841 of the Acts of 1914."

This section was held by the lower Court to be invalid for the reason above stated. Does this section delegate to the State Tax Commission the duty and power which the people by the amendment had imposed upon the General Assembly? Was the grant of power to the Commission to adopt a "uniform plan for the assessment of property" intended to grant a power which the General Assembly alone could exercise? These questions should not be answered in the affirmative if the language of the section is susceptible of a reasonable construction and application which will avoid conflict with the constitution and give to the section the force of law. "For as a conflict between the Statute and the Constitution is not to be implied, it would seem to follow, where the meaning of the constitution is clear, *that the Court, if possible, must give the statute such a construction as will enable it to have effect.* This is only saying in another form of words, that the Court must construe the statute in accordance with the legislative intent; since it is always to be presumed the Legislature designed the statute to take effect, and

not be a nullity." *Cooley's Constitutional Limitations,* 3rd Ed., 203.

The power to order the re-assessment having been granted to the Commission by the Act of 1914, Chapter 841, and which assessment must necessarily be made in conformity to existing laws, it is not reasonable to suppose that it was intended by the Legislature, in the enactment of a statute designed merely to provide additional and more effective machinery for doing the work, to confer upon the Commission a power under which radical changes might be made in the assessment and tax laws of the State. The work of assessing all the taxable property in Maryland is one of considerable magnitude, and attended with great difficulty, and it would appear to be of the greatest importance that uniformity of method, plan, and procedure in doing the work should be followed in all the counties. It is not to be presumed that the General Assembly intended to grant a power in violation of the Constitution. Construing the section in the light of the rules stated, the "uniform plan for the assessment of property" which the Commission was empowered to formulate may reasonably and properly be referred to such administrative methods of procedure as the Commission might adopt for making the assessment in accordance with and in conformity to the existing laws on the subject. This construction, in the circumstances of the case, appears to be reasonable and in accordance with the presumed intention of the Legislature, and sustains the validity of the section. No objection has been made, and, so far as we are able to see, can be made to the other sections of the Act. Section 249 is a separate and independent provision, and if, in the opinion of the lower Court it was unconstitutional, it was error under the authority cited to have stricken down the entire Act. It was said in *Curtis* v. *Mactier,* 115 Md. 386, that: "It has been held in many cases in this Court, in accordance with the decisions elsewhere that an entire Act ought not to be stricken down because one or more provisions are void

unless these · are so connected together in subject-matter, meaning or purpose, that it can not be presumed· the Legislature would have passed the one without the other."

Upon the· facts disclosed by the record in the case before us, we decide: *First,* that the State Tax Commission of Maryland has the power to order a general re-assessment of taxable real estate in Frederick County, *and that such assessment should be made in conformity to the existing laws upon the· subject; secondly,* that it is the duty of the County Commissioners of Frederick County to appoint such number of assessors for that county as shall have been ordered by the State Tax Commission; *thirdly,* that the plaintiffs are not entitled to the relief prayed for in the bill filed, and that the demurrer interposed by the defendants should have been sustained and the bill dismissed. The order appealed from will accordingly be reversed, and the bill of complaint dismissed.

*Order reversed and bill dismissed, the appellees to pay the costs.*