## 10893

### SANTEE MILLS *ET AL.* v. QUERY *ET AL.*

#### (115 S. E., 202)

1. TAXATION—TAXING POWER ABSOLUTE EXCEPT FOR CONSTITUTIONAL RESTRICTIONS.—Except in so far as it is limited by the State and Federal Constitutions, the taxing power of the State is general and absolute and extends to all persons, property, and business within its jurisdiction or reach.

2. CONSTITUTIONAL LAW—WISDOM OF LEGISLATION FOR LEGISLATORS.— Within constitutional limits, the necessity, utility, and expediency of legislation are for the determination of the Legislature alone.

3. CONSTITUTIONAL LAW—STATUTES PRESUMED CONSTITUTIONAL.—Every presumption must be indulged in favor of the constitutionality of an act of the Legislature.

4. CONSTITUTIONAL LAW—UNCONSTITUTIONALITY OF STATUTE MUST BE CLEAR TO BE SO PRONOUNCED.—To justify a Court in pronouncing legislation unconstitutional, the case must be so clear as to be free from doubt and the conflict of the statute with the Constitution must be irreconcilable.

5. STATUTES—INCOME TAX LAW HELD NOT UNCONSTITUTIONAL BECAUSE WITHOUT REQUIRED READINGS BEFORE PASSAGE; "READING."— South Carolina Income Tax Law, March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the State as tax on income a sum equal to one-third of the Federal income tax and incorporating by reference the provisions of the Federal Income Tax Act and the rules of the Department of Internal Revenue effectuating it, does not, by its enactment of the Federal Income Tax Law and the regulations for its enforcement by mere reference thereto, violate Const. S. C., art. 3, § 18, providing that no bill or joint resolution shall have the force of law until it shall have been read three times and on three several days in each house, etc., nor Senate Rule 39, nor House of Representatives Rule 47, as to reading of a bill; for the "reading" contemplated by the constitutional provision is the reading of the bill as drafted.

Note: On the constitutionality of the income tax, see notes in 27 L. R. A. (N. S.), 864, and L. R. A., 1915B, 569.

The question of the non-observance of the constitutional requirement as to reading a bill is discussed in a note in 40 L. R. A. (N. S.), 14.

As to the constitutional equality and protection of the laws in relation to taxes, see note in 60 L. R. A., 329.

6. STATUTES—PROVISION OF ONE STATUTE MAY BE APPLICABLE TO ANOTHER BY REFERENCE.—Generally, in the absence of constitutional restriction, the provisions of one statute may be made applicable to another by reference to the former in the latter, and in such cases this method is as effectual as though the whole statute were re-enacted verbatim.

7. EVIDENCE—STATUTES—JUDICIAL NOTICE TAKEN OF PUBLIC ACTS OF CONGRESS; FEDERAL STATUTES NEED NOT BE PLEADED IN STATE COURTS.—Judicial notice is taken of the public acts of Congress, and Federal statutes need not be pleaded in the State Courts.

8. STATUTES—STATE INCOME TAX LAW HELD SUFFICIENTLY DEFINITE.—In South Carolina Income Tax Law, March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the State as tax on income a sum equal to one-third of the federal income tax and incorporating by reference the provisions · of the Federal Income Tax Act and the rules of the Department of Internal Revenue effectuating it, the reference to the act of Congress and to the public rules and regulations adopted does not render the State act so uncertain in its meaning, scope, and effect as to render it nugatory.

9. CONSTITUTIONAL LAW—INCOME TAX LAW HELD NOT DELEGATION OF LEGISLATIVE POWER BY ATTEMPT TO ADOPT FUTURE FEDERAL REGULATIONS.—South Carolina Income Tax Law, March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the State as tax on income a sum equal to one-third of the federal income tax and incorporating by reference the provisions of the Federal Income Tax Act and the rules of the Department of Internal Revenue effectuating it, *held* not to contravene Const. S. C., art. 3, § 1, and Const. U. S., art. 4, § 4, regarding delegation of legislative powers, by adopting or attempting to adopt future laws, rules, and regulations of the Federal Government, for by adopting, in section 2, rules and regulations promulgated by the Department of Internal Revenue, it adopts only such rules and regulations as were in force at the time of the approval of the act; the lawmakers presumably intending to restrict the application of the provisions of the statute to the legitimate field of legislation.

10. CONSTITUTIONAL LAW—INCOME TAX LAW HELD NOT UNCONSTITUTIONAL DELEGATION OF POWER TO STATE TAX COMMISSION.—South Carolina Income Tax Law, March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the State as tax on income a sum equal to one-third of the federal income tax, and giving the State Tax Commission power to make rules and regulations to enforce the powers and authority given under

the act, does not delegate duties and powers to the State Tax Commission; the rule being that, while the Legislature may not delegate its power to make laws, it may vest in administrative officers, and bodies a large measure of discretionary authority, especially to make rules and regulations relating to the enforcement of the law.

11. Constitutional Law—Constitutionality of Tax Law Depends Upon its Practical Effect.—Whether a State taxing law contravenes constitutional rights must depend, not upon mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed.

12. Commerce—Constitutional Law—Taxation—Income Tax Law Held Not Discriminatory Nor Burden on Interstate Commerce, nor Abridgement of Privileges and Immunities of Nonresidents, nor to Deny Equal Protection of Laws or Due Process.—South Carolina Income Tax Law, March 13, 1922, requiring persons and corporations subject to the federal income tax to pay to the State as tax on income a sum equal to one-third of the federal income tax, nonresidents to pay the tax upon their separable net income from property owned or from business operations within the State on the same basis as resident taxpayers, *held* not unconstitutional as necessarily working discrimination between residents and nonresidents, as amounting to a burden upon interstate commerce, as abridging the privileges and immunities of nonresident citizens, as denying equal protection of the laws, nor as depriving persons or corporations taxed of due process of law.

Action brought in the original jurisdiction of the Supreme Court by Santee Mills, a corporation, and others, to enjoin W. G. Query, chairman, and others, constituting the South Carolina Tax Commission. Temporary injunction dissolved, prayer for permanent injunction denied, and complaint dismissed.

*Mr. William Elliott,* for plaintiff.

*Messrs. Samuel M. Wolfe, Attorney General,* and *J. Fraser Lyon,* for defendants.

June 17, 1922.

The opinion of the Court was delivered by Mr. Justice Marion.

Plaintiffs seek by action brought in the original jurisdiction of this Court to enjoin defendants, as members of the South Carolina Tax Commission, from enforcing the provisions of an Act entitled "An Act to raise revenue for the support of the State government by the levy and collection of a tax upon income," approved March 13, 1922. The complaint avers that the Santee Mills is a domestic corporation, owning manufacturing plants and doing business in this State; that the other plaintiffs are foreign corporations, owning and operating manufacturing plants in this State, but dependent in large measure upon business operations in other States, involving the carrying on of interstate commerce, for their corporate incomes; and that the said Act, which will be referred to herein as "the Act" or the "State Act," purporting to levy a tax upon their corporate incomes, is null and void, in that it contravenes various provisions of the State and Federal Constitutions. The answer of the defendants admits so much of the complaint as alleges that plaintiffs are subject to the payment of taxes under the provisions of said Act, but denies the legal conclusions of plaintiffs as to the invalidity of the law. The Attorney General of the State, appearing on behalf of the defendants, having raised no question as to the right of the plaintiffs jointly to maintain this proceeding for a writ of injunction, it will be assumed for the purpose of this decision that the issue made is properly before the Court.

The constitutional objections urged by plaintiffs involve two general propositions: First, that the Act is invalid as a whole, in that the General Assembly transcended the constitutional limitations upon its legislative powers (a) by attempting to give the force of Statute law to the Federal Income Tax Law and certain regulations of the United States government for its enforcement, in adopting said Federal law and regulations by a mere reference thereto in the Act, (b) by attempting to delegate the legislative powers of the State to the United States Congress and to Federal

officers, and (c) by attempting to delegate to the State Tax Commission legislative powers in applying the Act and in making rules and regulations thereunder. Second, that the application of said Act to such of the plaintiffs as are foreign corporations would result in the infringement of their constitutional rights, (1) by improperly burdening their interstate business, (2) by subjecting them to a discriminatory tax arbitrarily assessed, (3) and by denying to them due process and the equal protection of the laws. Certain objections which may not be fairly comprehended in the foregoing general propositions will not be adverted to specifically for the reason that in the view taken of the meaning of the Act, fairly interpreted, such objections are deemed hypercritical and groundless.

The Act is to be construed and interpreted in the light of certain fundamental principles of constitutional law and established rules of constitutional construction. Except in so far as it is limited by the State and Federal Constitutions, the taxing power of the State is general and absolute and extends to all persons, property and business within its jurisdiction or reach. 37 Cyc., 717. Within those limits the necessity, utility, and expediency of legislation are for the determination of the legislature alone. Every presumption must be indulged in favor of the constitutionality of an Act of the Legislature, and to justify a Court in pronouncing legislation unconstitutional, the case must be so clear as to be free from doubt and the conflict of the Statute with the Constitution must be irreconcilable. Ordinarily, to doubt the constitutionality of the law is to resolve the doubt in favor of its validity, or, as was stated by Mr. Justice Jones in the case of *State v. Hammond,* 66 S. C., 227; 44 S. E., 797:

"The Court should not declare a Statute unconstitutional unless the invalidity is manifest beyond a reasonable doubt." *Pelzer v. Campbell,* 15 S. C., 581; 40 Am. Rep., 705; *Grocery Co. v. Burnett,* 61 S. C., 214; 39 S. E., 381; 58

L. R. A., 687; *State v. Hammond, supra; Greenville v. Foster,* 101 S. C., 318; 85 S. E., 769; *Commissioners v. Buckley,* 82 S. C., 357; 64 S. E., 163; *Thomas v. Railway, etc., Co.,* 100 S. C., 481; 85 S. E., 50; *Ware Shoals Mfg. Co. v. Jones, Comptroller,* 78 S. C., 211; 58 S. E., 811.

It is true that the Act bears upon its face evidence of lack of careful workmanship and of cohesive construction. It is also unfortunately true that under the legislative methods of enacting laws prevailing in this and in most of the American States, the more important the legislation sought to be passed the more difficult it is generally to secure a result that is free from ambiguity and inconsistency. Such legislation in the final outcome is usually a mosaic or more  or less incongruous elements contributed by many men of many minds. And so "it has been said that the eyes of Courts are never limited to the mere letter of a law, but that they look behind the letter to determine its true purpose and effect." 6 R. C. L., page 81. Such considerations are properly borne in mind in subjecting this Act to the primary test of legislative intent. So subjected, we think the provisions of the Act against which plaintiffs' contentions are directed are fairly and legitimately susceptible of the following construction and interpretation: First, all persons, firms, partnerships, corporations, and trustees for persons or estates, liable to the payment of a Federal income tax, are required to pay to the State as income a sum equal to 33 1/3 per cent. of the amount required to be paid as income tax to the United States government. Second, for the purpose of graduating such tax, of determining the amount thereof, and of prescribing the method, means, and manner of its assessment and collection, the provisions of the Act of Congress of the United States approved November 23, 1921 (42 Stat., 227), relating to levy, assessment, and collection of income tax by the United States government, and Acts amendatory thereof, passed and approved prior to the approval of the State Act, together with the rules and regu-

lations of the Department of Internal Revenue promulgated by virtue of such Acts of Congress and which are not in conflict with the provisions of the State Act, are adopted and enacted as if set forth in so many words. Third, that the duties and powers of the Commissioner of Internal Revenue and the authority given to the Internal Revenue Department by said Federal Income Tax Act of November 23, 1921, and existing Acts amendatory thereof, are imposed and conferred upon the Tax Commission of this State in so far as applicable, and the State Tax Commission is authorized and empowered to make such rules and regulations "not inconsistent with law" for the enforcement of the powers and authority given under the terms of the Act as they may deem necessary. Fourth, that nonresident persons and firms and foreign corporations (construing together the several pertinent provisions of the Act) owning property within the State, or carrying on business within the State, from which a net income is derived, shall pay to the State the required tax on net income from property owned or from business operations within the State upon the same basis and subject to the same exemptions as resident taxpayers. The evident intent is to impose the State tax upon nonresident persons and foreign corporations to the extent that such nonresident and foreign corporations would be liable if their property within the State were owned, or the business done by them within the State were conducted, by residents or by domestic corporations. The liability of such nonresident persons and firms and foreign corporations is to be measured by, and the tax computed upon, the separate or separable net income accruing from business done, from operations, and from other sources within the State, to be returned in the same manner and form as to such State income as is required by the government of the United States for the return of the aggregate incomes of such taxpayers under the Federal law.

The points raised under plaintiffs' first general proposition as to the invalidity of the Act will be considered in the order above stated.

It is contended that the enactment of the Federal Income Tax Law and the regulations for its enforcement by mere reference thereto in the State Act was in violation of Article 3, § 18, of the Constitution of South Carolina, requiring that no Bill or Joint Resolution shall have the force of law until it shall have been read three times and on three several days in each House, etc., and further providing that each branch of the General Assembly may provide by rules for a first and third reading of any Bill or Joint Resolution by its title only. · Rule 39 of the Senate provides that the first and third reading of each Bill shall be by its title only, and Rule 47 of the House of Representatives provides that the second reading of a Bill shall be Section by Section and line by line and word by word. The' contention is that the constitutional requirement and the rules of the two branches of the General Assembly in conformity thereto were not complied with, in that the Federal law rules and regulations referred to in the State Act were not incorporated *ipsissimis verbis* in the Act itself, and that, not having been so incorporated and read word by word, the Act was not properly enacted. While the dangers of such a method of legislation are not open to serious question, we are clearly of the opinion that the constitutional inhibition here invoked does not apply. The "reading" contemplated by Section 18, Article 3, of the Constitution, is the reading of the bill as drafted.

"In the reading of the Bill it seems to be sufficient to read the written document that is adopted by the two Houses; even though something else becomes law in consequence of its passage, and by reason of being referred to in it." Cooley's *Constitutional Limitations,* page 200, citing *Dew v. Cunningham,* 28 Ala., 466; 65 Am. Dec., 362; *District of Columbia v. Washington Gaslight Co.,* 3 Mackey, 343.

See *Baird v. State,* 52 Ark., 326; 12 S. W., 556; *Beard v. Wilson,* 52 Ark., 290; 12 S. W., 576; *Titusville Iron Works v. Keystone Oil Co.,* 122 Pa., 627; 15 Atl., 917; 1 L. R. A., 361.

The general rule is that—

"The provisions of one Statute may be made applicable to another by reference to the former in the latter, in the absence of constitutional restriction." 36 Cyc., 969, and cases cited; 25 R. C. L., page 875.

In such cases this method is as effectual as though the whole Statute were re-enacted verbatim. *Turney v. Wilton,* 36 Ill., 385; *Garland v. Hickey,* 75 Wis., 178; 43 N. W., 832. It is a method of legislation that is not without precedent in this State. Thus by an Act of the General Assembly, approved the 23d day of February, 1889, Volume 23, page 61, telegraph and telephone companies were authorized and empowered to condemn rights of way by the institution of condemnation proceedings as provided for and authorized by Statute for securing to railroads a right of way in this State. Powers of condemnation to be prosecuted in the manner authorized by Statute for railroads have been conferred upon other public service companies. Acts of incorporation, adopting by reference thereto the provisions of other similar Acts, are of somewhat frequent occurrence in the legislative history of the State. An illustration of this is presented in the case of *Lyles v. McCown,* 82 S. C., 127; 63 S. E., 355; 17 Ann. Cas., 436, where an Act of the General Assembly, adopting by reference the provisions of a repealed Statute, was considered. In that case the Court uses the following language:

"To the extent that the General Assembly in any Act refers to the provisions of a repealed Statute and adopts them, the repealed Statute is re-enacted, and to that extent is as much the law as if its provisions were fully set out in the new Statute"—citing *Houston & T. C. Ry. Co. v. State* (Tex. Civ. App.); 39 S. W., 390; *Chenango B. Co. v. Bing-*

*hampton B. Co.,* 3 Wall, 51; 18 L. Ed., 137; *Flanders v. Merrimack,* 48 Wis., 567; 4 N. W., 741; *Valley W. W. v. San Francisco,* 82 Cal., 286; 22 Pac., 910, 1046; 6 L. R. A., 756; 16 Am. St. Rep., 116; *Jones et al. v. Dexter,* 8 Fla., 276; *In re Wood's Estate,* 31 Ch. D., 607; *Waterworks v. Longshaw,* 9 Q. B. D., 145; *Nunes v. Wellisch,* 12 Bush (Ky.), 363; *Commonwealth v. Melville,* 160 Mass., 307; 35 N. E., 863; *Wright et al. v. Overstreet et al.,* 122 Ga., 633; 50 S. E., 487; *City of N. Y. v. Knickerbocker T. Co.,* 104 App. Div., 223; 93 N. Y. Supp., 937; *Gorham Mfg. Co. v. R. R. Co.,* 27 R. I., 35; 60 Atl., 638.

General Statutes of South Carolina, 1882, § 2738, 7, 8 enacted the common law of England in so far as same was not altered by the said General Statutes nor inconsistent with the Constitution of the State, etc. In the absence of express constitutional inhibition, therefore, we see no reason why a Federal Statute and rules and regulations of the United States government having the force and effect of law cannot be made a part of the Statute law of this State by adequate reference thereto as fully and effectually as a pre-existing Statute of the State could be so adopted. The Federal Income Tax Law referred to in the State Act is as fully effective in the State of South Carolina for the purposes of the national government as if it had been re-enacted to *tidem verbis* by the General Assembly of South Carolina. Judicial notice is taken of the public Acts of Congress, and Federal Statutes need not be pleaded in the State Courts. 25 R. C. L., 955. The reference in the State Act to the Act of Congress and to the public rules and regulations adopted would seem to be sufficiently definite to enable the provisions proposed to be enacted to be ascertained with reasonable certainty. To the extent that the United States Income Tax Law and the rules and regulations promulgated for its enforcement are susceptible of definite determination for the purposes of enforcing liability to the Federal government, such law would seem to

be susceptible of definite determination in its application to the liability of taxpayers under the State law, which provides for the payment to the State of a sum equal to a fixed proportion of the Federal income tax. It cannot be concluded, therefore, that the State Act is thereby rendered so uncertain in its meaning, scope, and effect as to render it nugatory.

The next contention to be noticed is that the Act incorporated by reference laws made and to be made by Congress and regulations made and to be made thereunder by Federal officers, and that it thereby contravenes Section 1 of Article 3 of the State Constitution, and Section 4 of Article 4 of the United States Constitution in delegating to the United States Congress and to Federal officers the non-delegable legislative powers of the General Assembly. There can be no doubt that "the enactment of laws is one of the high prerogatives of a sovereign power," and that "it would be destructive of fundamental conceptions of government through republic institutions for the representatives of the people to abdicate their exclusive privilege and obligation to enact laws." In Re Opinion of the Justices, 239 Mass., 606; 133 N. E., 453. But we do not think the contention that the Act adopts or attempts to adopt future laws, rules and regulations of the Federal government is warranted by the language of the Statute. The reference (Sec. 2 of the Act) is to the United States Income Tax Act of November 23, 1921, and Acts amendatory thereto "which have been passed and approved prior to the time of the approval of this Act." The "rules and regulations promulgated by the Department of Internal Revenue under and by virtue of said Acts" are also adopted in the State Act. While the language used with respect to said "rules and regulations" is perhaps broad enough to cover future rules and regulations, in the absence of a clear indication of a different intention, it will be presumed that it was the intent of the lawmakers to restrict the application of the

statutory provision in question to the legitimate field of legislation (6 R. C. L., page 80; *School Town of Andrews v. Heiney,* 178 Ind., 1; 98 N. E., 628; 43 L. R. A. [N. S.], 1023; Ann. Cas., 1915B, 1136; *Commonwealth v. People's Express Co.,* 201 Mass., 564; 88 N. E., 420; 131 Am. St. Rep., 416), and that the rules and regulations thus adopted by reference were those in force at the time of the approval of the Act. So construed, the income tax imposed by the State Act is a sum equal to 33 1/3 per cent. of the United States income tax for which the taxpayers subject to the State tax were liable to the United States government under the designated Act of Congress, and the regulations made thereunder, in force at the time of the approval of the State Act. It is conceivable that changes in the Federal law occurring subsequent to the approval of the State Act might lead to complications in its enforcement. But such considerations, especially in the absence of any showing of fact in the case at bar tending to establish an infringement of plaintiffs' rights in that regard, afford no sufficient warrant for holding the Act invalid.

The contention that duties and powers conferred by the Act upon the State Tax Commission amount to an unconstitutional delegation of legislative power is also untenable. The State Tax Commission has no power delegated to make any rules or regulations inconsistent with the law enacted or for any other purpose than to carry out the legislative will expressed in statutory form. It is elementary that, while the Legislature may not delegate its power to make laws, it may vest in administrative officers and bodies a large measure of discretionary authority, especially to make rules and regulations relating to the enforcement of the law. 12 C. J., 844–853; *Port Royal Min. Co. v. Hagood,* 30 S. C., 519; 9 S. E., 686; 3 L. R. A., 841; *Michigan Cent. R. Co. v. Powers,* 201 U. S., 245; 26 Sup. Ct., 459; 50 L. Ed., 744; *Leser v. Lowenstein,* 129 Md., 244; 98 Atl., 712.

The second general proposition advanced by plaintiffs involves broadly the contention that the enforcement of the Act will necessarily work discrimination and entail burdens that amount to an infringement of rights secured by various provisions of the State and Federal Constitutions. Where the question is whether a State taxing law contravenes constitutional rights "the decision must depend, not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed." *Shaffer v. Carter,* 252 U. S., 37; 40 Sup. Ct., 221; 64 L. Ed., 445. No showing has been made that the injurious results anticipated have eventuated in fact or that plaintiffs have in fact suffered prejudice. In the view taken of the purpose, scope, and meaning of the Act as herein construed, it cannot be held that its enforcement will necessarily infringe the constitutional guaranties invoked by the plaintiffs, and the Court cannot assume in advance that such results will eventuate. The powers of the State with respect to the assessment and collection of an income tax imposed upon residents of the State, considered in relation to State and Federal constitutional guaranties as to equality and uniformity of taxation, as to the equal protection of the laws, and as to due process of law, are elaborately discussed by Mr. Justice Hydrick in the case of *Alderman v. Wells,* 85 S. C., 507; 67 S. E., 781; 27 L. R. A. (N. S.), 864; 21 Ann. Cas., 193. The right of a State to levy an income tax upon income derived by nonresidents from property within the State or from business carried on within the State is settled in the affirmative by the recent decision of the Supreme Court of the United States in *Shaffer v. Carter,* 252 U. S., 37; 40 Sup. Ct., 221; 64 L. Ed., 445, and *Travis v. Yale & Towne Mfg. Co.,* 252 U. S., 60; 40 Sup. Ct., 228; 64 L. Ed., 46. A State law imposing upon a foreign manufacturing corporation a tax upon net income earned from business carried on within the state, the amount

of such income to be ascertained by reference to the income upon which the corporation is required to pay a tax to the United States, has been recently upheld in the case of *Underwood Typewriter Co. v. Chamberlain,* 254 U. S., 113, 41 Sup. Ct., 45; 65 L. Ed., 165.  In the light of the principles announced in the cases cited and therein applied to state income tax laws not differing essentially in meaning, scope, and effect from the act here involved, we are satisfied that no adequate consideration has been suggested upon which to base the conclusion that the enforcement of the act will burden interstate commerce, abridge the privileges and immunities of nonresident citizens, deny the equal protection of the laws, or deprive plaintiffs of due process of law, in derogation of constitutional guaranties.

For the reasons indicated, the temporary injunction is dissolved, the prayer for a permanent injunction denied, and the complaint dismissed.