CHICK v. NEWBERRY AND UNION COUNTIES.

HENDERSON v. SAME.

1. The Court of Common Pleas has original jurisdiction of such actions *ex delicto* as may, by law, be prosecuted against a county, where the act complained of is the result of alleged negligence on the part of the county commissioners.

2. Municipal corporations are not liable in a civil action for damages, unless made so by statute. And where a county is made liable for damages caused by defective *highways, causeways,* or *bridges,* it is not thereby made liable for injuries caused by a defective flat-boat on a ferry operated by the county commissioners.

3. A flat-boat at a ferry connecting the highways on the opposite banks of a river, is not itself a highway within the meaning of this statute. *Gen. Stat.,* 1087.

4. Whatever may be the jurisdiction of county commissioners over ferries (*Const.,* art. IV., § 19), no action can be maintained against the county for damages except in cases specially provided for by law.

5. Nothing done by county commissioners can operate by way of estoppel to subject a county to an action not authorized by law.

Before FRASER, J., Newberry, November, 1886.

The opinion states the case.

*Messrs. Y. J. Pope* and *Johnstone & Cromer,* for appellants.

*Messrs. Goggans & Herbert* and *William Munro,* contra.

October 26, 1887.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   These cases were heard together on the Circuit, and will be so considered here; but to prevent confusion, the observations made will be addressed to the first case stated—that of Mrs. Chick—intending that they should apply equally to the other case.

In 1874 the legislature passed an act, "That the county commissioners of Newberry County be, and they are hereby, authorized and required to build a bridge across Tyger River, at or near by Gordon's Ferry in said county; that the said bridge shall be free, and no toll or charges whatever be collected for crossing said bridge," &c., and a few days after passed another act providing, "That if any bridge over the waters of this State, which constitute a boundary line between counties, shall be necessary to be erected or repaired, it shall be the duty of the commissioners of said counties to cause the same to be erected or repaired," &c. 15 *Stat.*, 787. Tyger River, a fresh water stream not navigable at the point known as "Gordon's Ferry," is the boundary line between the Counties of Newberry and Union. The pleadings do not inform us whether the free bridge directed by the above act, was ever built or not; but the plaintiff alleges that in 1886, "the Counties of Newberry and Union jointly owned and operated a flat-boat at Gordon's Ferry on Tyger River, and transported wagons and teams for the public across said river; that said flat-boat was defective, and while transporting across said river a wagon belonging to the plaintiff, laden with wheat, sank, whereby the wagon and wheat were lost and a mule drowned, to the damage of the plaintiff three hundred dollars," &c.

The cause came on for trial, and the defendants—the Counties of Newberry and Union—interposed an oral demurrer, upon two grounds : "First, that the Court of Common Pleas has no original jurisdiction to try such actions, but only appellate jurisdiction ; and, second, that the complaint does not state facts sufficient to constitute a cause of action." His honor, Judge Fraser, sustained the demurrer on the second ground—that the complaint did not state facts sufficient to constitute a cause of action against the counties jointly or severally ; and the plaintiff appeals to this court upon the following grounds : "1. Because his honor erred in sustaining the demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action. 2. Because his honor erred in sustaining the demurrer, by holding that the statutes now of force in this State, independent of any charge of negligence, do not give any right to recover against·

the defendants. 3. Because his honor erred in holding that the defendants have no legal right to own and operate the ferry, in the operation of which the damages complained of occurred," &c.

As to the question of jurisdiction. We think this was not a simple "county claim," within the meaning of the decision in *Jennings* v. *Abbeville County* (24 *S. C.*, 548), which should have been preferred originally before the county commissioners, and could only get into the Court of Common Pleas by appeal. The action is not upon a breach of contract made by the county commissioners, but for damages on account of alleged negligence on their part—an action *ex delicto*—and it would be against all principle and the analogies of the law for them to be judges in their own case. The plaintiff clearly has no redress unless it can be afforded by the Court of Common Pleas.

Can that court give it? It may be that, if the persons known as the county commissioners had individually established a private ferry at the place indicated, and had undertaken to put across the public generally and their property for compensation, they might have been made liable for damages occasioned by their negligence. See *Littlejohn* v. *Jones*, 2 *McMull.*, 368 ; 39 *A. D.*, 132. But here the question reaches further than that, and is whether the county commissioners, in establishing the ferry and acting negligently, so represented the county, as to make it (the corporation) responsible in damages for their negligence. Neither municipal corporations nor *quasi* corporations nor such other public bodies as are charged with like duties, are liable in a civil action for damages, unless imposed by statute. *Young* v. *City Council of Charleston*, 20 *S. C.*, 116. By the act of 1874, re enacted in the General Statutes as section 1087, it is provided that, "Any person, who shall receive bodily injury or damage in his person or property through a defect in the repair of a highway, causeway, or bridge, may recover, in an action against the county, the amount of damage fixed by the finding of a jury," &c.

Does this act authorize the action ? Prior to its adoption, the disability in such cases (against the county) was general, and still remains as to all except such as are taken out by the act, which certainly does not, in express terms, cover this case. Neither the

word "ferry" nor "flat-boat" occurs in the act. It is urged, however, that the act affording a remedy in certain cases not allowed before, is remedial in its character, and should, therefore, be construed liberally; that, as it provides relief for an injury arising from a defective "bridge," a "flat-boat" substituted for a bridge comes within the spirit and object of the act, and it should be so declared. It is true, there are some cases in which the court may give a liberal construction to an act of the legislature, but we disclaim the right to supplement by way of amendment. Our province is not to make, but to declare, the law. The act in question undertakes to enumerate the cases in which the right to sue the county is given, *viz.*, for "defects in the repair of a highway, causeway, or a bridge." This enumeration, as it seems to us, excludes matters not enumerated. It cannot be said with certainty, that it was the intention to include defects in the appliances for running a ferry, and that it was a mere *casus omissus* to omit all reference to that particular subject. There may have been some good reason for not including "a ferry" or "ferry-boat," and we cannot venture to add it to the list. That is a matter exclusively for the legislature.

It is, however, argued that, although the act makes no express reference to a ferry or its usual appliances, it does expressly allow an action for damages caused by "a defect in a highway," and as the flat-boat at the ferry crossed the stream and connected the highway on one side with the same continuing on the other side, it may be regarded as the highway from bank to bank, and therefore within the purview of the act. This is certainly ingenious, but is it sound? The definition of a highway is: "A passage that is open to all the public. Thus public rivers are in law considered as highways. A highway need not necessarily be a thoroughfare. The interest of the public in a highway consists solely in the right of passage over it. Thus a highway over land (which is what is usually meant by a highway) gives the right of walking, driving, and riding," &c. 1 *R. & L. Law Dict.*, title "Highway." As we understand it, there is "no right of passage" at any particular point across a river, except where there is a legally chartered ferry, conferring the franchise to keep a boat for ferrying passengers, &c. The act here authorizing the

establishment of a free bridge did not include a ferry, for the words "at or near by Gordon's Ferry," only indicate the location of the bridge.

Possibly the means employed (such as a flat or boat), in connecting the highway on one bank with its continuation on the other, might, in some general sense, be called a part of the highway, even without a charter. But the question here is one of construction; in what sense did the legislature use the word "highway"? As indicated in the definition given above, the ordinary meaning of the word "highway" is a passage on land. It was used in the act in connection with the words "causeway" and "bridge." A bridge spanning the water and connecting the banks, would seem nearer to being a "highway" than a ferry-boat, and as it was deemed proper or necessary to express the case of "a bridge," it would seem to be a strained construction that it was unnecessary to mention a "flat-boat" or ferry, for the reason that it was already included in the word "highway." As the law makers were fixing a list of exceptions to the rule, it would seem that, if they had intended to include a flat-boat running across the river, they would have said so.

Besides, it is somewhat significant that another distinct clause of the general statutes (1094), which undertakes to define the duties of county commissioners in regard to crossings over streams, which constitute boundary lines between counties, makes no mention whatever of "ferries" or "boats." While the law does require a county, through its commissioners, to keep its highways in good repair, on pain of being sued for damages occasioned by their being out of repair, we have not been able to reach the conclusion that it was within the contemplation of the legislature either to include "ferries" regularly chartered by third persons, or to authorize the county commissioners themselves to own and operate a flat-boat for the public, so as to make the county, in its organized capacity, responsible in an action *ex delicto* for damages, caused by their non-feasance or malfeasance.

But it is still further suggested that, without any reference to the act of the legislature authorizing the county commissioners of Newberry and Union to establish a free bridge at or near by Gordon's Ferry on the Tyger River, they had the right, under

the constitution itself, to establish for the counties a free ferry, at the place indicated, or any other point, where the river is the dividing line between the two counties; that the Newberry board had the right to go to the middle of the river, and that of Union to meet them there—thus establishing a free ferry across from one bank to the other. The constitution does give the county commissioners "jurisdiction over roads, highways, ferries, bridges, * * * and in every other case which may be necessary to the internal improvement and local concerns of the respective counties," &c. This is certainly a large jurisdiction yielded by the State to the county boards, which undoubtedly does embrace the over-looking and keeping in repair of the highways and bridges. It might be interesting to inquire whether this jurisdiction, conferred by the constitution of 1868, gives to the county boards respectively the right to establish and charter a ferry within the county. It seems that such has not been the view of the legislature, for sections 1149 and 1150 of the General Statutes provide specifically how and under what circumstances the legislature shall grant the charter of a ferry, &c. But it is not necessary to go into that now. Whatever may be the constitutional jurisdiction of the county commissioners "over ferries," it is well settled in this State that the county cannot be sued for damages except in the cases specially provided for in the act, which we have already endeavored herein to construe and interpret.

It is finally argued that the county is estopped by the acts of the commissioners from denying its liability for damages, arising out of the alleged mismanagement of a business, established and conducted by the authorized officers and representatives of the county and for the benefit of its citizens. If, in operating the ferry, the commissioners were acting within the scope of their authority, and the injury received were one of those for which the act so often cited provides a remedy, by action of law against the county, then there would be no need of the doctrine of estoppel. But as, in our view, the injury complained of is not within the purview of the act, which alone allows a county, in its organized capacity, to be sued, we think the doctrine of estoppel has no application to the case. See *Black* v. *City of Columbia,*

19 *S. C.*, 413; *Young* v. *Charleston*, 20 *Id.*, 116; *Gibbes* v. *Town Council of Beaufort, Ibid.*, 213; and *Acker* v. *County of Anderson, Ibid.*, 495.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.