7412

## BLACK v. FISHBURNE.

1. WORDS AND PHRASES—SINKING FUND.—A BOND OF A MUNICIPALITY should not be regarded as "issued" until a contract of sale is completed and the bonds actively or constructively delivered, and it is sufficient if the sinking fund authorized by section 7 of article XIII of the Constitution, for the redemption of the bonds, be provided after date of bonds.

2. MUNICIPAL BONDS.—A town may issue bonds for school purposes running for a longer time than the life of the town, which will be valid after the expiration of its charter, and if the town surrender its special charter and become incorporated under the general law that will not affect the validity of the bonds.

Petition in the original jurisdiction of this Court by H. W. Black, Jr., against E. L. Fishburne, as intendant, *et al.,* for injunction.

*Mr. Gruber,* for petitioner.

*Mr. Fishburne,* contra.

January 8, 1910.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   H. W. Black, a resident and taxpayer of the town of Walterboro, filed his petition in this Court on the          day of January, 1910, alleging that the defendants, the intendant and wardens of the town, were about to issue illegal bonds of the town to the amount of twenty thousand dollars, maturing in ten years, for the purpose of raising funds to be used in the erection of a school building, and praying that such bond issue be prevented by an order of injunction.

Sections 2021 and 2022 of the Civil Code authorize the issue by towns of bonds for school purposes upon compliance with the requirements therein set forth.   The petition sets out the steps taken under these sections, and shows that all formal requirements of the law have been met, and that the bonds will be valid obligations of the town, unless rendered invalid by the following considerations, which are alleged against their validity:

"(a)  That the said bonds, bearing date August 2, 1909, are in contemplation of law issued as of that date, and the ordinance of the town council, of date July 30, 1909, as amended by ordinances of date August 28, 1909, and October 11, 1909, are not in compliance with the requirements contained in section 7 of article VIII of the State Constitution, that 'cities and towns shall, on the issuing of such bonds, create a sinking fund for the redemption thereof at maturity,' it being respectfully submitted that the sinking fund created by such ordinances has been created after and not before the issuing of such bonds.

"(b)  It appearing that the charter of the town of Walterboro will expire during the year 1910, long prior to the

maturity of the bonds thus issued, it is respectfully sub-
mitted that the town of Walterboro is without authority
to issue bonds payable at a period beyond its corporate life.

"(c) That after the town of Walterboro is reincorporated
under the renewal law, as set forth in this petition, the
town council of the new corporation would be without
authority to execute, sell and deliver as valid obligations of
the town the bonds authorized by the former corporation."

The defendants demurred to the petition on the ground
that it does not state facts sufficient to constitute a cause
of action, because it appears on the face of the petition that
the bonds will be legal and valid.

The first position stated against the validity of the bonds
seems to have been taken in excess of caution. The Con-
stitution, in section 7, article VIII, providing for issue of
bonds by cities and towns, requires "that cities and
towns shall, on the issuing of such bonds, create
a sinking fund for the redemption thereof at
maturity." Even if it be assumed that this means that the
sinking fund must be created before the bonds can be legally
issued, the validity of these bonds would not be impaired.
The date, 2d August, 1909, printed or written on the bond,
is not conclusive of the date of the issue. They are still
in fact in the hands of the town council, and cannot be
regarded "issued" until a contract of sale is completed and
the bonds actually or constructively delivered. *Cleveland*
v. *Spartanburg,* 54 S. C., 83, 31 S. E., 871; *Brownnell* v.
*Town of Greenwich* (N. Y.), 22 N. E., 24; *Yesler* v.
*Seattle,* 1 Wash., 322; *State* v. *Pierce,* 52 Kan., 523.

The second objection, that the charter of the town of
Walterboro will expire during the present year, long before
the expiration of the ten years for which the bonds are to
run, we think is disposed of by the terms of the
sections 2021 and 2022 of the Civil Code, which
authorize cities and towns to issue bonds for erect-
ing school buildings, and the other purposes therein men-

tioned. The statute is made to apply to *any* incorporated city or town, and after the petition has been filed and the election been held, with a result favorable to the bond issue, the municipal authorities have no discretion to refuse to issue the bonds. There are no exceptions in the law, and it would make no difference that the charter of the town would expire immediately after the election and issue of the bonds, for the statute would, nevertheless, apply and authorize the issue. The terms of the act are so broad that, even in such a case, the municipal authorities are given full power to fix any date for the maturity of the bonds they may see fit. When a town council exercises the power thus given, and fixes the maturity in issuing the bonds, it makes a contract for a municipality under express authority of the General Assembly, and the validity of the contract cannot be impaired by the fact that it is to operate beyond the time limit of the charter. That the General Assembly did not intend that such a limitation on the power of the municipal authorities to fix the maturity of the bonds should be implied is clearly shown by other legislation on the same general subject. By reference to the Civil Code, section 1963, it will be seen the corporate life of towns of more than one thousand and of less than five thousand inhabitants is limited to thirty years, yet all towns, including those of the class above mentioned, are authorized by section 2009 to issue bonds for the purposes therein mentioned, to run for a period of forty years, ten years beyond the life of the corporation; and by section 2015 they are authorized to issue refunding bonds, "payable in not more than fifty years," twenty years beyond the entire corporate life of towns of this class. These statutes making it perfectly clear that the General Assembly has authorized municipal corporations to issue bonds, maturing beyond the life of the corporation as expressed in the original charter, they must remain valid obligations until paid. The true view of the legislation to which we have referred, considered as a whole, is that the

statutes authorizing towns and cities to contract to pay
money at a time beyond the original charter life are to be
construed as legislative amendments of the original charters,
extending the corporate existence with respect to the debts
involved until the date of the maturity and payment of the
bonds; for we cannot impute to the General Assembly the
purpose to authorize a town to contract debts and pass out
of existence with respect to such debts before the creditor
could enforce them. As to all other purposes, the original
limitation of the corporate life stands; but for all purposes
relating to the debt—that is, for the purposes of levying
taxes for the payment of the debt, of enforcing collection
by suit, and other like matters, the territory and population
embraced in the limits of the original charter are to be
regarded as retaining the corporate existence.

We are unable to find any direct authority support-
ing this conclusion, but it results from the application
of a well-established principle. · It has been often held that
where the legislature authorized the creation of a municipal
debt, and, after such debt had been made, absolutely repeals
the charter, and then creates of substantially the same terri-
tory what purports to be an entirely new corporation, it
will, nevertheless, be presumed that the legislative intent was
to continue the former corporate existence, and that the debt
attaches to the new corporation. *Broughton* v. *Pensacola,*
93 U. S., 266; *Shapleigh* v. *San Angelo,* 167 U. S., 646;
*Mt. Pleasant* v. *Beckwith,* 100 U. S., 520; Dillon on Munic.
Corpor., sec. 172; Abbott on Munic. Corpor., sec. 33. In
the case first cited, the Court thus states the principle:
"Although a municipal corporation, as far as it is invested
with subordinate legislative powers for local purposes, is a
mere instrumentality of the State for the convenient admin-
istration of government, yet, when authorized to take stock
in a railroad company, and issue its obligations in payment
of the stock, it is to that extent to be deemed a private cor-
poration, and its obligations are secured by all the guaranties

which protect the engagements of private individuals.   The inhibition of the Constitution, which preserves against the interference of a State the sacredness of contracts, applies to the liabilities of municipal corporations created by its permission; and although the repeal or modification of the charter of a corporation of that kind is not within the inhibition, yet it will not be admitted, where its leglislation is susceptible of another construction, that the State has in this way sanctioned an invasion of or escape from liabilities the creation of which is authorized.   When, therefore, a new form is given to an old municipal corporation, or such corporation is reorganized under a new charter, taking, in its new organization, the place of the old one, embracing substantially the same corporation and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are presumed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the legislature intended that the liabilities as well as the right of property of the corporation in its old form should accompany the corporation in its organization.   *   *   *   The principle which applies to the State would seem to be applicable to cases of this kind.   Obligations contracted by its agents continue against the State, whatever changes may take place in its constitution or government.   'The new government,' says Wheaton, 'succeeds to the fiscal rights, and is bound to perform the fiscal obligations of the former government.   It becomes entitled to the public domain and other property of the State, and is bound to pay its debts previously contracted.' "

Our conclusion is, that even if there should be no renewal of the charter of the town of Walterboro, its corporate existence would continue for the purposes of the debt embraced in the bonds until their maturity and payment.

But the petition alleges that the town of Walterboro is about to surrender its special charter and become incorporated under the general law of the State. The bonds which the town is contemplating issuing under its present charter being valid obligations of the town, under the principles stated in the authorities above cited, the surrender of a special charter and the issuance of a new charter would not affect their validity. The bonds will be just as valid obligations of the municipality after the new charter is issued as before.

But, beyond this, the town bonds would be valid even if they should be issued after the certificate of incorporation under the general law embodied in article II of chapter 49 of Civil Code. Section 1 of article VIII of the Constitution provides: "Cities and towns now existing under special charters may reorganize under the general laws of the State, and when so reorganized their special charters shall cease and determine." While the Constitution thus ordains that the old charter shall cease and determine, clearly it does not ordain, expressly or by implication, that the corporate life of the town shall be cut off, even for a moment. The provision is not that the existing city or town shall go out of existence, but that one charter shall be substituted for another; not that there shall be destruction of the city or town, but merely reorganization. This substitution of one charter for another and reorganization of the municipality is not a break in the corporate existence of the city or town, but a continuation of it, with the powers and franchises conferred by the general law. From this conclusion, it results that the property of the municipality acquired under the old charter continues its property under the new, its contracts legally made under its old charter remain valid under the new, and all corporate proceedings legally undertaken while the old charter was in force may be carried to completion after the issuance of the new charter, unless they will result in the doing of an act which could not be legally

done under the new charter.   Such a bond issue as that under consideration would be authorized under precisely the same conditions under the substituted charter as under the one about to expire; and hence when the new charter or certificate of incorporation is issued the municipal authorities may proceed with the issue of the bonds just as if all the preliminary steps had been taken under the new charter instead of under the old.

The judgment of this Court is, that the demurrer be sustained and that the petition be dismissed.