## POULNOT v. CANTWELL

(123 S. E., 651)

1. Constitutional Law—Every Presumption Indulged in Favor of Constitutionality of Act.—Every presumption must be in-

Note: For authorities discussing the question of establishment, regulation and protection of ferries, see notes in 59 L. R. A., 513; 30 L. R. A. (N. S.), 462; 52 L. R. A. (N. S.), 574; L. R. A. 1916D, 831.

dulged in favor of constitutionality of an Act, and Courts should not declare an Act unconstitutional, unless its invalidity is manifest beyond a reasonable doubt.

2. Statutes—Joint Resolution for Construction and Operation of Ferry and Vehicular Communication From Terminus Held Not to Relate to More Than One "Subject."—Joint Resolution March 5, 1924, providing for construction and operation of a ferry and of vehicular communication from eastern terminus of ferry, *held* not to relate to different subjects in violation of Const., Art. 3, § 17; "subject" being the thing legislated about or the matter or matters upon which the Legislature operates to accomplish a definite object or objects reasonably related one to the other.

3. Statutes—Title of Joint Resolution for Construction and Operation of Ferry Held Sufficient.—The title of Joint Resolution March 5, 1924, providing for construction and operation of a ferry and vehicular communication for eastern terminus, *held* sufficient to cover provisions thereof.

4. Counties—Joint Resolution Authorizing Issuance of Bonds for Construction and Operation of Ferry Held for Permissible Purpose.—Joint Resolution March 5, 1924, authorizing County to levy and issue bonds for construction and operation of a ferry, *held* not to violate Const., Art. 10, § 6, providing that Legislature has no power to authorize a County to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings, and bridges, and for ordinary County purposes.

5. Constitutional Law—The Determination of Questions of Fact Upon Which Constitutionality Depends Held Primarily for Legislature.—The determination of questions of fact on which the constitutionality of statute depends is primarily for the Legislature, and generally Courts will acquiesce in the legislative decision, unless it is clearly erroneous.

6. Counties—Joint Resolution Providing for Tax Levy for Construction and Operation of Ferry Held to Sufficiently State its Object.—Joint Resolution March 5, 1922, § 6, providing for an annual levy of 2½ mills for payment of indebtedness incurred for construction and operation of a ferry by County, *held* not to violate Const., Art. 10, § 3, prohibiting a tax levy, except in pursuance of law distinctly stating its object.

7. Constitutional Law—Ferries—Joint Resolution for County Ferry Held Not to Violate Constitution as to Impairment of Contract.—The provisions of Joint Resolution March 5, 1924, providing for construction and operation by County of a ferry as to a limited tax levy and indeterminate date of maturity for retirement of indebtedness, *held* not to violate constitutional provision relating to impairment of contract.

8. CONSTITUTIONAL LAW—STATUTE WITHIN LEGISLATIVE POWER, UNLESS EXPRESSLY OR IMPLIEDLY PROHIBITED BY CONSTITUTION.—A statute is within the scope of the legislative power, if not expressly or by clear implication prohibited by some constitutional mandate.

9. CONSTITUTIONAL LAW—COURTS NOT CONCERNED WITH EXPEDIENCY AND POLICY OF LEGISLATION.—Courts have no legitimate concern with legislation in the aspect of its wisdom, expediency, and policy.

10. FERRIES—CONTENTION THAT JOINT RESOLUTION AUTHORIZING CONSTRUCTION OF FERRY MADE NO PROVISION FOR OPERATING EXPENSES HELD WITHOUT MERIT.—A contention that Joint Resolution March 5, 1924, providing for construction and operation by County of a ferry and incurring indebtedness therefor, is illegal, in that it contemplates operation of a ferry, and no provision is made for raising funds for payment of operating expenses, *held* untenable.

11. COUNTIES—JOINT RESOLUTION AUTHORIZING INCURRING OF INDEBTEDNESS FOR CONSTRUCTION OF FERRY HELD NOT TO VIOLATE CONSTITUTIONAL PROVISION LIMITING COUNTY INDEBTEDNESS.—Joint Resolution March 5, 1924, providing for construction and operation by Charleston County of a ferry, *held* not to violate Const., Art. 10, § 5, limiting the permissible bonded debt of any County.

12. COUNTIES—BONDED DEBT DOES NOT EXIST UNTIL BONDS ARE SOLD.— A bonded debt does not exist within the meaning of Const., Art. 10, § 5, limiting the permissible bonded debt of a County, until the bonds authorized by statute have been issued by completion of contract of sale and actual or constructive delivery.

Action in the original jurisdiction of the Supreme Court by E. H. Poulnot, on behalf of himself and all other taxpayers in the County of Charleston in like plight, who may join in this action and are in the cost thereof, against W. P. Cantwell and others, constituting the County Board of Commissioners of Charleston County, and John P. Deveaux and others, constituting the Cooper River Ferry Commission. Petition dismissed.

The title and preamble of the resolution referred to in the opinion follows:

"The State of South Carolina.

"At a General Assembly begun to be holden at Columbia, on the second Tuesday in January, in the year of our Lord one thousand nine hundred and twenty-four, and thence continued by divers adjournments to the —— day of ——. In

the year of our Lord one thousand nine hundred and twenty-four.

### "A Joint Resolution

"To create a Cooper River Ferry Commission and to authorize, empower, and direct them to operate a public ferry in Charleston County, from the City of Charleston to Mount Pleasant or to the mainland to the west therefrom at or near Hog Island and to Sullivan's Island, all of which places are in Charleston County; to provide for the construction and maintenance of vehicular communication from the eastern terminus of said ferry to Mount Pleasant and between Sullivan's Island and Mount Pleasant; to provide for the borrowing of money by the county of Charleston for the purchase and construction of wharves, landings, boats, roads, approaches, embankments, trestles, and bridges adjacent and appurtenant thereto and for the maintenance and operation of same; and for the carrying out such projects to arrange for the borrowing of money by the County of Charleston and to provide for a tax levy to meet the interest and create a sinking fund.

"Whereas, the entire mainland of Charleston County east of the Cooper River is cut off from regular and reliable communication with the remainder of the said County; and

"Whereas, Sullivan's Island in Charleston is also cut off from regular and reliable communication with the mainland of Charleston County; and,

"Whereas, the purchase and construction of the necessary wharves, landings, boats, approaches, embankments, trestles, and bridges necessary to the establishment of a public ferry across the Cooper River, with wharves or landings in the City of Charleston, the town of Mount Pleasant, or on the mainland to the west therefrom at or near Hog Island and Sullivan's Island and a public thoroughfare from the eastern terminus thereof to Mount Pleasant, South Carolina, and a public thoroughfare crossing the Cove Inlet from Mount Pleasant, South Carolina, to Sullivan's Island, South Car-

olina, will cost Five Hundred Thousand ($500,000.00) Dollars.

"Whereas, the proposed public ferry will be a part of the highway system of this State, and the establishment, maintenance, and operation thereof is an ordinary County purpose; therefore," etc.

*Mr. J. N. Nathans,* for petitioner, cites:   *Act violates Sec. 17, Art. 3, Const. 1895, which is the same ·as Art. 2, Sec. 20, Const. 1868.   Courts will endeavor to uphold legislation where possible:*   116 S. C., 193; 16 S. C., 47; 30 S. C., 9.   *Ferry is not within terms of Art. 10, Sec. 6, Const. 1895:*   27 S. C., 69.   *Ferry is common carrier:*   11 S. C., L., 19; 12 S. C. L., 157.   *Provisions of act are mutually dependent and where part of act is unconstitutional whole act becomes unconstitutional:*   63 S. C., 75; 99 S. C., 218.

*Mr. James Allan,* for respondent, cites:   *Act is constitutional:*   116 S. C., 193; 103 S. C., 10; 118 S. E., 779; 83 S. C., 481; 89 S. C., 117.   *Ferry is part of highway:*   12 C. J., 715, 815; 25 C. J., 715; 192 U. S., 454; 93 S. W., 650; 73 S. ·W., 457; 125 Pac., 1429; 10 S. C. L., 387; 20 S. C., 213; Code 1922, Vol. 3, Sec. 2904.   *Construction of statute:*   12 C, J., 793; 36 Cyc., 1128; 84 S. C., 552; 100 S. C., 355; 95 S. C., 403.

June 9, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Action in the original jurisdiction of this Court to enjoin the County Board of Commissioners of Charleston County and the Cooper River Ferry Commission from issuing certain notes as obligations of Charleston County, pursuant to the enabling provisions of a Joint Resolution of the General Assembly, approved the 5th day of March, 1924, creating the Cooper River Ferry Commission, vesting it with certain powers, imposing certain duties, ·and authorizing the creation of certain indebtedness, etc.   The plain-

tiff, Poulnot, and an intervener, Reeves, as resident tax-
payers base their right to injunctive relief upon the alleged
unconstitutionality of the foregoing Joint Resolution.

The questions raised, which will be considered in
the order presented by counsel, are to be resolved
in the light of the familiar and well-settled general
rule that every presumption must be indulged in favor of
the constitutionality of an act of the Legislature, and that
Courts should not declare a statute unconstitutional unless
the invalidity is manifest beyond a reasonable doubt. *Battle
v. Wilcox* (S. C.), 122 S. E., 516.

First, it is urged that said Joint Resolution is vio-
lative of Section 17, Article 3, of the Constitution,
providing that "every act or resolution * * * shall re-
late to but one subject, and that shall be expressed in the
title." The title and preamble of this Resolution should be
set out in the report of the case.

It is suggested (a) that the Resolution relates to more
than one subject, in that it provides for the operation of a
ferry from the City of Charleston to Mount Pleasant and
to Sullivan's Island, which is one subject, and also provides
for the construction and maintenance of vehicular communi-
cation from the eastern terminus of said ferry to Mount
Pleasant and between Sullivan's Island and Mount Pleas-
ant, which is another subject. Strictly in rehetoric, and
more often in general use, "subject" is the broad word for
anything written or spoken about. Century Dictionary. As
used in this section of the Constitution, "subject" is the
thing legislated about, or the matter or matters upon which
the legislation operates, to accomplish a definite object, or
objects reasonably related one to the other. Obviously,
we think, the subject of the Resolution here in question is
"communication," connoting travel and transportation, be-
tween one part of Charleston County and another. The
definite object of the legislation is to provide the means
of such communication. The means, broadly, is that of a

highway for travel and transportation over land and water between the points sought to be put into that kind of communication with each other. From the facts recited in the preamble of the Resolution, which facts are here undisputed, it appears that the establishment of the form of communication contemplated necessarily involves the provision of means of travel and transportation over both land and water. Hence it would seem clear that the provisions contained in the Resolution as to ferriage over water and vehicular communication by land do not relate to different subjects, but are closely connected, if not essential, parts of the one subject of legislation.

It is further objected that the Resolution gives (b) power of condemnation to the County Board of Commissioners, and (c) requires the operation of the ferry as a toll ferry, "without the title showing" that power and requirement. In *Verner v. Muller,* 89 S. C., 117; 71 S. E., 654, it is said:

"The mandate of the Constitution is complied with if the title states the general subject of legislation, and the provisions in the body of the act are germane thereto as means to accomplish the objects expressed in the title. *Conner v. Railroad,* 23 S. C., 327. *State v. O'Day,* 74 S. C., 448; 54 S. E., 607."

The same view, in somewhat amplified form, is thus stated in *Lillard v. Melton,* 103 S. C., 10, 14; 87 S. E., 421, 423.

"When the general subject is expressed in the title, any details of legislation which provide the means, methods. or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the constitution."

Express reference is made in the title to the creation of a ferry commission, to be empowered to operate a public ferry, to "the construction and maintenance of vehicular

communication" between certain points, to the "purchase and construction of wharves, landings, boats, roads, approaches, embankments, trestles and bridges," etc., and to "the maintenance and operation of same," and, in the preamble, to the establishment of said "public ferry" and "public thoroughfare" between designated points. The provisions in the body of the Resolution as to the powers of condemnation conferred and as to power of the ferry commission to make rules and regulations as to the use of the property under its control, subject to the limitation that tolls in excess of a fixed amount should not be charged, relate to details which are obviously intended to facilitate the accomplishment of the general purpose, and which are clearly germane to the subject of the legislation.

For the reasons stated, the contention that the Resolution infringes Section 17, Article 3, in the particulars referred to, cannot be sustained.

The second objection is that the Resolution violated Section 6, Article 10, of the Constitution, in that it authorizes the levying of a tax and the issuance of bonds for the purchase and construction of wharves, landings, boats, and, for the operation of a ferry, which are not purposes for which a county under the provisions of said section is authorized to levy a tax or issue bonds.

The pertinent portion of the provision invoked is as follows:

"The General Assembly shall not have power to authorize any County or Township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges * * * and for ordinary county purposes," etc.

In this Resolution it is recited as a fact found by the General Assembly that "the proposed public ferry will be a part of the highway system of the state, and the establishment, maintenance and operation thereof is an ordinary county purpose." The determination of

questions of fact upon which the constitutionality of statutes may depend is primarily for the Legislature, and the general rule is that the Courts will acquiesce in the legislative decision, unless it is clearly erroneous. 6 R. C. L., 114, § 113. Whether the purpose for which taxation is here authorized is for a "road" purpose or for "ordinary county" purposes is essentially a question of fact, and, in view of the presumption in favor of the validity of statutes, it must be assumed that the Legislature had before it any evidence necessary to determine whether the proposed ferry would constitute a part of the highway or "road" system of the county, or would subserve a public purpose within the legitimate scope of an "ordinary county" expenditure. Obviously, the physical geography of a county, whose territory is traversed or surrounded by rivers or divided and separated by bodies of water, might be such as to render the expenditure of money for roads and bridges partially or wholly ineffective, if no provision could be made for ferries either as a part of the county's system of roads or as a part of the "ordinary" expenses of the county having a clear and legitimate relation to the public welfare. That the canon of construction here applicable is not the rule of strict construction here applicable is not the rule of strict construction properly applied in *Chick v. Newberry Co., 27* S. C., 419; 3 S. E., 787, where it was held that a ferry was not a "highway, causeway, or bridge," within the intendment of a statute, giving a right of action, in derogation of the common law, against a county for injury resulting from a "defect in repair," would seem too clear for argument. That the classification by the supreme legislative power of the state of a public expenditure for a ferry either as a road or bridge purpose or as an ordinary county purpose is not so unreasonable as to justify condemnation upon the theory that it constitutes an unwarranted encroachment upon the judicial power would seem equally clear. Thus, in the aspect

of a public road as stated by an annotator (note, 59 L. R. A. 513)—

"In a general way it may be said that a ferry is a public highway or thoroughfare across a stream of water or river by boat, instead of by a bridge (*Chilvers v. People,* 11 Mich. 43) ; or, as one Court said, a ferry is a moving public highway upon water. *Patterson v. Wollmann,* 5 N. D., 608, 33 L. R. A., 536; 67 N. W., 1040."

See *St. Clair County v. Interstate S. & C. T. Co.,* 192 U. S., 454; 24 Sup. Ct., 300; 48 L. Ed., 518. *New York v. Starne,* 106 N. Y., 11; 12 N. E., 631; 25 C. J., 1049, § 1, and cases there cited. And as a county or public purpose, recognized and approved both by the Legislature of this State and by the Courts generally, see Volume 3, § 2904, Code of 1922. *Stark v. McGowen,* 1 Nott & McC., 397, note. *Morse v. Garner,* 1 Strob., 514; 47 Am. Dec., 565; Southern Illinois, etc. *Bridge Co. v. Stone,* 174 Mo., 1, 22; 73 S. W., 453; 63 L. R. A., 301. *Reid v. Lincoln County,* 46 Mont., 31; 125 Pac., 429.

The constitutional objection here made is without merit, and is overruled.

The third contention is that the Resolution is violative of the provisions of Article 10, Section 3, of the Constitution, in that it authorizes, empowers, and directs the county board of commissioners to execute notes not exceeding in amount $500,000; and any renewal or renewals thereof, and to "pledge the taxes of Charleston County to secure the same." The section of the Constitution referred to provides that "no tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; to which object the tax shall be applied." The objection would seem to be patently hypercritical. The authority and obligation to pledge the taxes of the county could refer and apply only to such taxes as are or may be lawfully levied for the purpose for which the taxes are pledged. The Resolution (Section 6) provides for the an-

nual levy of "a two and one-half (2½) mill tax" on all property "for the payment of interest on said notes, with the surplus being held as a sinking fund to retire the said notes as soon as possible." It is not contended that the provision of Section 6 for the annual levy of 2½ mills does not sufficiently state the object of such levy, and, since that is the only provision of the Resolution which purports to levy a tax, or to authorize and direct such levy, there is obviously no infringement of the constitutional inhibition invoked.

7-9   The fourth and fifth objections may be considered together. They advance the proposition that the Resolution is illegal and void, (a) in that it authorizes the incurring of an indebtedness of $500,000, and at the same time limits the annual levy for the payment of principal and interest to 2½ mills, and (b) in that it provides for retirement of said notes "as soon as possible," or upon a contingency, and not when such contractual obligations may be or become due. The contention, in substance, is that it is beyond the power of the Legislature to enact a law, expressly authorizing the incurring of an obligation in a certain amount, which contains a proviso that only a limited levy shall be made each year to meet the payment of the debt, and that the obligation shall be retired only when payment thereof is possible through the application of the proceeds of such limited levy, for the reason that such an act by its terms confers, or attempts to confer, power to impair the obligation of contracts. It does not appear that either the plaintiff, Poulnot, or the intervener, Reeves, has any such interest in this legislation as would entitle him to question its validity as impairing the obligation of a contract. 12 C. J., 767, § 186. But, waiving that consideration, we are clearly of the opinion that the validity of the law may not be impeached on the ground assigned. If the enactment of a law authorizing the issuing of these notes and the incurring of the contractual obligation thereby imposed

is within the scope of legislative power—and it is within
the scope of legislative power, if not expressly, or by clear
implication, prohibited by some constitutional mandate—
then the financial plan proposed or authorized for the liqui-
dation of the debt, in so far as such plan does not involve
means and methods expressly or by clear implication inhib-
ited by the Constitution, is purely a legislative question,
having to do with the wisdom, expediency, and policy of
legislation. That Courts have no legitimate concern with
legislation in that aspect is elementary. 6 R. C. L., 104-
110. *Lillard v. Melton, supra. Bradford v. Richardson,*
111 S. C., 215; 97 S. E., 58. *Santee Mills v. Query,* 122 S.
C., 158; 115 S. E., 202. It is not suggested that the pro-
visions as to the limited tax levy and the indeterminate
date of maturity of the notes are expressly inhibited by any
constitutional restriction or direction, but it is argued that
those provisions "might and probably would of necessity"
result in the impairment of the obligations of the contracts
entered into. That the law may not be declared invalid upon
any such basis of conjecture would seem too clear to justify
argumentative discussion. In any view, under the funda-
mental rule that every presumption must be indulged in favor
of the validity of a statute, we perceive no valid ground for
such a construction of this Resolution as would impute to
the General Assembly an intention to nullify one provision
authorizing the making of a contract by another authoriz-
ing the impairment of such contract; and, certainly, it can-
not be assumed in advance under that theory that rights
protected by constitutional guaranty will be infringed in
fact by carrying out the provisions of the law. See *Santee
Mills v. Query, supra. Shaffer v. Carter,* 252 U. S., 37;
40 Sup. Ct., 221; 64 L. Ed., 445. In that state of the record
here presented we must decline to enter upon an academic
discussion of the effect of the incorporation in a statute of
this character of provisions as to a limited tax levy and
as to indeterminate date of maturity of the obligations au-

thorized. That this Resolution cannot be declared "illegal and void" because it contains such provisions is all that it is necessary or proper for us here to decide.

The sixth objection urged is that the statute "is illegal and void, in that it contemplates the operation of a steam ferry, and no provision is made for the raising of funds by taxes, or otherwise, for the payment of the costs and expenses of such operation, or the payment of its employees in the operation of said ferry, and, therefore, the said ferry commission will be incurring obligations in the name of Charleston County without authority of law therefor"; and in that the application by the commission of any part of the proceeds of the notes authorized to be issued to the payment of such expenses of operation —an application which the commission admit they intend to make—would be unlawful. The objection is clearly untenable. The Resolution plainly authorizes the operation of the ferry and the application to the expenses of such operation of the proceeds of the notes. In conferring such authority upon a duly constituted agency of the county it is not pointed out wherein the statute contravenes any constitutional limitation upon the plenary legislative power of the General Assembly. As suggested above, Courts do not sit to review the wisdom and expediency of legislative acts, and the possibility that the operation of such a ferry might entail burdensome liabilities is a consideration which is in no wise pertinent, save in so far as it bears upon the construction of some constitutional limitation invoked to invalidate the delegation of power or grant of authority. If the establishment of the ferry, its "purchase, and construction" is a purpose for which taxes may be levied or bonds issued, as we have held, clearly the operation of the ferry essential to converting the physical property into a public use is embraced within that purpose. See, generally, *Battle v. Wilcox* (S. C.), 122 S. E., 516.

13— S. C. R., 129.

The seventh objection, vigorously urged by the intervener, Reeves, is that the Joint Resolution is null and void, in that it contravenes the limitations of Section 5, Art. 10 of the Constitution, providing that the bonded debt of any county, etc., shall never exceed 8 per centum of the assessed value of all taxable property therein and "that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property * * * as valued for taxation by the State." Careful consideration has been accorded the intervener's position, ably and elaborately set forth in his counsel's brief. In the view taken of this question, however, it is not deemed necessary to enter into a detailed statement and discussion of the mathematical calculations of the respective parties. The validity of the intervener's conclusion that the Resolution should be declared invalid as constituting an infringement of the Constitutional mandates contained in Section 5, Article 10, depends upon the validity of two contentions, neither of which can be sustained.

The first is that the whole of an issue of coupon bonds which the county board of commissioners of Charleston County are authorized and empowered to issue, "not exceeding in amount $1,500,000," under the terms and provisions of an Act of the General Assembly, ratified March 5, 1924, shall be considered a part of the "existing bonded debt" of the County of Charleston in determining whether the issue of notes authorized by this Resolution will infringe the constitutional limitations invoked. The Act referred to was passed at the same session of the General Assembly and ratified on the same day the Resolution now under review was passed and ratified. It has not been made to appear as a fact that bonds in any amount have actually been "issued" pursuant to the authority conferred by that act; and, as we understand, intervener's contention is directed wholly to the point that a bonded debt

exists within the meaning of the Constitution when it is authorized by the Legislature. We are clearly of the opinion that for the purposes of applying these constitutional limitations a bonded debt does not exist until the bonds authorized by legislative enactment have been issued by the completion of a contract of sale and actual or constructive delivery. See *Black v. Fishburne,* 84 S. C., 451; 66 S. E., 681; 19 Ann. Cas., 1104. Until the bonds are actually issued in the sense that they have passed into the hands of a *bona fide* purchaser or creditor no debt is created and no debt exists. That a mere legislative authorization to contract a debt, of which for many reasons a municipal corporation might never be able to avail itself, in and of itself creates a bonded debt, which must thereafter be held to exist in the sense of the constitutional provisions here invoked, is a proposition wholly lacking in rational appeal. Obviously, it would seem the correct view is that into both these acts, authorizing the creation of county indebtedness, must be read the proviso that the authority conferred is subject to the limitations imposed by Section 5 of Article 10 of the Constitution. To the extent the authority conferred, pursuant to the terms of the statutes, may be exercised and executed without creating a bonded indebtedness in excess of the constitutional limitations, to that extent, and no further, may it be lawfully exercised and executed. In passing on the validity of an act of the Legislature authorizing a town to issue bonds "to any amount" for a certain purpose, under a provision of the Constitution of 1868 (Section 17, Article 9), requiring that the bonded debt of any municipal corporation "shall never exceed eight per centum of the assessed value of all the taxable property therein," that eminent jurist, Chief Justice McIver, in *Bank v. Darlington,* 50 S. C., at page 362, 27 S. E., 858, said:

"It is true, that the act conferring the power to issue bonds does provide that the corporation may issue bonds

in aid of railroads 'to any amount,' but in order to avoid any conflict with the constitutional provision limiting the amount of the bonded debt of any town to eight per centum of the assessed value of all the taxable property therein, that provision of the act must be qualified by such constitutional provision, and so read that the authority will be confined to the issue of bonds to any amount not exceeding the limit prescribed by the Constitution, upon the well-settled principle that a statute will never be construed unconstitutional when it can be in any possible way reconciled with the provisions of the Constitution."

That view and conclusion are clearly applicable here.

The second postulate upon which the intervener's argument proceeds, the validity of which is essential to the correctness of his conclusion on this phase of the case, is that the decision of this Court in *Nettles v. Cantwell,* 112 S. C., 24; 99 S. E., 765, was erroneous and that that case should be disapproved and overruled. Intervener's request for permission to attack that decision, "with a view of asking the Court to review, modify, or overrule the same," as required by Section 6, Rule 9, of this Court, was not granted. Even if such permission had been granted, however, a due regard for the rule of *stare decisis* is a matter of commercial importance upon which individuals and the public may have relied in making contracts and in acquiring property rights, and would constrain us not to disturb the point settled by that decision which is here again brought in question. In that case it was held by the Circuit Judge, with respect to the application of the limitations of Section 5, Article 10, of the Constitution, to the bonded debt of Charleston County, that, inasmuch as at the time of the adoption of the Constitution of 1895 the City of Charleston had a bonded debt which then "exceeded and still exceeds 15 per cent of its taxable property," that the "intention of the Constitution would be carried out, * * * if for the purpose of a bond issue by Charleston County only so much of the indebtedness

of the City of Charleston as amounted to eight per cent of its taxable property was considered, and the county and its other political subdivisions held authorized to incur further indebtedness until the indebtedness of the county and its political subdivisions amounted to 15 per cent of the whole taxable value of property in the county." Applying that construction, the Circuit Judge concluded that the bond issue of the County of Charleston, authorized by the act there under review, would not exceed the limitations, and that the act was not unconstitutional. That conclusion, on appeal, was sustained by this Court in a unanimous decision. If that conclusion was erroneous, then the bond issue under the act sustained in *Nettles v. Cantwell* was invalid, and any subsequent bond issues of Charleston County based upon that decision are invalid. Even if a departure here from the rule announced in *Nettles v. Cantwell* would not necessarily, have the effect of disturbing or impairing the rights of holders of bonds issued subsequent to that decision, we are clearly of the opinion that for the purposes of the case at bar, involving a bond issue of the County of Charleston, the rule announced and applied in *Nettles v. Cantwell* should be adhered to. If adhered to, we agree with plaintiff's counsel that the question raised by intervener as to the invalidity of this Joint Resolution on the ground that the indebtedness authorized is in excess of the constitutional limitations of Section 5, Article 10, have been decided adversely to the intervener's contention.

It is accordingly ordered and adjudged that the petition for injunction be denied and the petition dismissed.

Petition dismissed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.