15856

TOWN OF CONWAY v. LEE
TOWN OF CONWAY v. DRAYTON *ET AL.*

(38 S. E. (2d), 914)

*Messrs. Epps & Epps,* of Conway, for Appellants,

*Messrs. Wright & Burroughs* and *F. A. Thompson,* all of Conway, for Respondent,

July 8, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

The Appellants, Slim Drayton and Minnie Drayton, were convicted and sentenced in the Mayor's Court of the Town of Conway, South Carolina, for storing and having in possession alcoholic liquors. The Appellant, Dayton Lee, was convicted and sentenced in the same Court for driving an automobile while under the influence of liquor.

In each case, the Appellants made timely and identical motions to quash or dismiss the warrant or information, the motions being overruled by the Mayor. Upon conviction and sentence, each Defendant appealed to the Court of General Sessions upon identical grounds. Both appeals involving the same questions were by agreement of counsel heard together by his Honor, Judge J. Robert Martin, Jr. His Honor confirmed the sentences of the lower Court and ordered the appeals dismissed.

In due time, appeals in both cases were taken to this Court on the following Exceptions, Counsel having agreed that the two cases be heard together.

"1. His Honor erred, it is respectfully submitted, in not reversing the sentence and in not holding that there is no ordinance of the City of Conway making that with which the Appellants were charged any offense; the error being that there was no such Ordinance, and his Honor should have so held.

"2. His Honor erred, it is respectfully submitted, in not reversing the sentence and in not declaring the Ordinance under which the Appellants were, charged, convicted and sentenced, null and void for the following reasons:

"(a) The same is unconstitutional in that it contravenes the provisions of Section 5 of Article 1 of the Constitution of 1895, and derprives the Defendants of their liberty and property without due process of law, in that said Ordinance describes no offense and enumerates no act or acts as constituting an offense against the Municipality.

"(b) The said Ordinance is oppressive and void beyond the power of the Municipality to enact, in that it would ascuse, try, convict and punish for conduct which is not prohibited and nowhere mentioned in said Ordinance and nowhere declared to be a crime by said Ordinance.

"(c) The Town Council was without power or authority to pass a blanket Ordinance adopting the Common and Statute Laws of the State and fixing a penalty for violating any of the same, and especially so, when there is no adequate reference in said Ordinance to the State Statute making it a crime to manufacture, store, have in possession or sell intoxicating liquors, or to drive an automobile while under the influence of liquor, or to resist arrest."

These Exceptions really pose two questions:

1. Did his Honor err in not reversing the sentences of the Defendants and in not holding that there is no Ordinance of the City of Conway making it a crime to manufacture, store, have in possession or sell intoxicating liquors, to drive an automobile while under the influence of liquor or to resist arrest? (Exception 1.)

2. Did his Honor err in holding that the City Council of the City of Conway had the power and authority to pass a blanket Ordinance adopting the Common Law and Statute Law of the State and fix a penalty for violation of the same? (Exceptions 2, a, b, c.)

The questions involved are very closely related and depend upon the power and authority of City Council to pass a blanket Ordinance adopting the Common and Statute Law of the State. In the year 1943, the City of Conway attempted to codify all of its Ordinances into a printed Code which was adopted on February 9th of that year, the Code repealing all pre-existing Ordinances with certain exceptions which are not here relevant. Chapter 3 of the Code of Ordinances reads as follows:

"SECTION 1. Be it ordained by the City Council of the City of Conway, South Carolina: That all acts and conduct which, under the Common Law of the State of South Carolina, constitutes crimes are hereby declared also to constitute violations of the Ordinances of said City of Conway when such acts or conduct occur within the corporate limits of said City.

"SECTION 2. That all acts and conduct which constitute violations of the Statutory Law of the State of South Carolina, including the Code of 1942 and Acts of the General Assembly up to and including the Acts of 1942, are hereby declared also to constitute violations of the Ordinances of said City of Conway when such acts or conduct occur within the corporate limits of said City, except when the Statutory Law of said State is not applicable to Municipal Corporations of the population classification to which the City of Conway belongs.

"SECTION 3. That any violation of any of the Ordinances of said City, including the Common and Statutory Law of the State as herein adopted, shall be punished, upon conviction, by a fine of not exceeding One Hundred Dollars or imprisonment for not exceeding thirty days, in the discretion of the Mayor or other official presiding at such trial.

"SECTION 4. That the municipal court of said City shall not be vested with jurisdiction to try cases of murder, manslaughter, rape, attempt to rape, arson, common law burglary, bribery or perjury.

"SECTION 6. This Ordinance shall take effect immediately upon final passage."

It is the Appellants' contention that the City Council of the City of Conway was without power and authority to pass a blanket Ordinance, and adopt the Common and Statute Law of the State, and that the said Ordinance is void

in that it violates the due process provision of Section 5 of Article 1 of the Constitution of 1895 in that it is oppressive and beyond the power of the Municipality to enact.

This case presents a rather novel question and little help can be found from other decisions of this Court, however, in the case of *Santee Mills v. Query*, 122 S. C., 158, 115 S. E., 202, which was an action brought in the original jurisdiction of the Supreme Court seeking an injunction of the South Carolina Tax Commission from enforcing the provisions of an Act entitled: "An Act to raise Revenue for support of the State Government by the levy and collection of a tax upon income", approved March 13, 1922. This Act was No. 502 in the Acts of 1922, and in the second paragraph of said Act, we find the following:

"2. TAXABLE NET INCOME—U. S. ACTS AND REGULATIONS, ADOPTED—PROVISOS—That for the purpose of determining the amount of net income, upon which income taxes are to be paid under the provisions of this act, and for the purpose of fixing the amount of said income tax, the payment and collection thereof, all of the provisions of an Act of Congress of the United States of America, entitled 'An Act to reduce and equalize taxation to provide Revenue for other purposes', approved November 23, 1921, relating to levy, assessment and collection of income tax by the United States Government, and Acts amendatory thereto, relating to income taxes and the collection thereof, which have been passed and approved prior to the time of the approval of this act, and assessing and collecting of said taxes and surtaxes, and all rules and regulations promulgated by the Department of Internal Revenue under and by virtue of said Acts be, and the same are hereby, adopted and enacted, together with all of the provisions thereof applicable to the enforcement of the same which are not in conflict with any of the provisions of this Act, and declared to be the method, means and manner by and under which the amount of the net income of any taxpayer shall be ascertained and the amount of income tax due the State of

South Carolina computed subject to the exemptions and limitations hereinafter set out in the Act, the same as if the said Act and all Acts amendatory thereto were set forth in full *in totidem verbis.*"

The Court upholding the provision in said Act said:

"In the absence of express constitutional inhibition, therefore, we see no reason why the Federal Statutes and Rules and Regulations of the United States Government having the force and effect of law, cannot be made a part of the Statute Laws of this State *by adequate reference thereto* as fully and effectually as a pre-existing Statute of the State could be so adopted."

And in the case of *State et al. v. Meares, Supt. of Education, et al.,* 148 S. C., 118, 145 S. E., 695, the Plaintiffs instituted proceedings in the original jurisdiction of the Supreme Court as electors and school patrons of the School District No. 6-E located in Greenville County against the school authorities of that County asking for a Writ of Mandamus to compel the County Board to order an election of school trustees and for an injunction restraining the Board from itself appointing such trustees.

It appears that Section 1752 of the Code of 1912 provided that the State Board of Education should appoint the trustees for each school district in each County, and that this Section was amended in 1914 (21 Stat., 567), so as to provide for the election of school trustees in Greenville County. However, the Code of 1912 being omitted, the Code of 1922, Section 2615, provided that the Board should appoint school trustees in the respective Counties, and added the following proviso:

"Provided, further, that nothing herein contained shall be construed to repeal any Act of the General Assembly heretofore passed providing for a different method of selection or the election of the school trustees of any particular district of any County or State."

The Court called attention to the constitutional provision that the Code adopted every 10th year should be declared by the General Assembly to be the only statutory law of the State and that, therefore, the proviso above alluded to was beyond the power of the Legislature to adopt, and held that it was clear that the compilers of the Code intended to re-enact the amendatory acts, but the question was not what the compilers of the Code intended to do, but whether under the expressed provisions of the Constitution the effort was rendered futile by the failure to bodily reproduce them in the Code.

The Court called attention to the fact that if the Legislature could incorporate acts into the Code by mere reference to them, anyone seeking to find the law on any subject would still be put to the necessity of examining yearly volumes of the Statutes prior to the Code and then went on to say:

"And where the reference as in the present case is inadequate or indefinite, not even showing the title of the Acts or date of their passage, all such yearly volumes would have to be examined."

In Chapter 3 of the Code of Ordinances, it is provided that all acts and conduct which constitute violations under the Common Law of the State of South Carolina, and all acts and conduct which constitute violations of the Statutory Law of the State of South Carolina, including the Code of 1942, and Acts of the General Assembly up to and including the acts of 1942, are declared also to constitute violations of the Ordinances of the City of Conway when they occur within the corporate limits. There are excepted from this blanket Ordinance, the jurisdiction of the Municipal Court to try those named cases which are also named in the Constitution where it provides that the Legislature shall not grant to inferior Courts the power to try cases of murder, manslaughter, rape, attempt to rape, arson, common-law burglary, bribery and perjury.

In the case of *Rutledge v. City of Greenville et al.,* 155 S. C., 520, 152 S. E., 700, the Court after showing how unsatisfactory it would be to refer to various acts and amendments thereto back of the last Code used the following language:

"In the present case, we think the reference in the 1901 general law is inadequate as it does not show any identifying mark of the Statute or Statutes intended to be incorporated in that law. But, waiving this consideration, we meet the more serious objection that the Act of 1899 was not incorporated bodily in the Code as a part of the general statutory law."

In 37 Am. Jur., 786, the General Law is stated as follows:

"An Ordinance is subject to the objection of uncertainty where it declares that all offenses which are misdemeanors under the statute or Common Law of the State shall be misdemeanors under the Ordinance."

██ Criminal Ordinances are, of course, to be strictly construed and a Defendant has a right to know just wherein he is charged with the commission of a crime and not be faced with a blanket Ordinance which, in effect, says that everything which is a violation of the law within this State, both by Statute and Common Law, is a violation of the City Ordinance, no adequate reference being made to any specific Statute this Court is of the opinion that the Ordinance is void because of uncertainty.

Respondents rely strongly upon the case of *Sloss-Sheffield Steel and Iron Co. v. Smith,* 57 Sou., 29, which involved the City Ordinances of the City of Birmingham, Alabama, but the City of Birmingham had extraordinary powers through its Charter and therefore not applicable to the facts of this case.

██ Respondent also contends that Appellants are not in position to raise the constitutionality of the Ordinance because they have no interest therein.

This position is not well taken and it is the opinion of this Court that the motions to quash or dismiss in the Mayor's Court should have been granted and it is so ordered.

Reversed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.